**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JEFF FOSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     **PLAINTIFF DEMANDS** |
| PNC BANK NA d/b/a PNC MORTGAGE, | )     **TRIAL BY JURY** |
| | ) |
| Defendant. | ) |

## <u>COMPLAINT</u>

Now comes Plaintiff JEFF FOSTER, by his attorney Wayne B. Giampietro, and

complaining of Defendant PNC BANK NA d/b/a PNC MORTGAGE, alleges as follows:

FACTS COMMON TO ALL COUNTS

1.    Plaintiff is a citizen of the State of Florida, who owns real estate located in Chicago,

Cook County, Illinois, as well as elsewhere.

2.    Defendant PNC BANK NA is a Delaware National Banking Association with its

principal place of business in Pittsburgh, Pennsylvania, which has offices and does

business in Chicago, Cook County, Illinois.

3.    This Court has jurisdiction over this matter based upon 28 U.S.C. 1331, in that this

dispute involves predominant issues of federal law.  Defendant is liable unto Plaintiff

pursuant to the provisions of the Fair Credit Billing Act, 15 U.S.C. 1666, et. seq., the Fair

Credit Reporting Act., 15 U.S.C. 1681n,  as well as other applicable federal and state

laws.  Further, the matter in controversy between Plaintiff and Defendant exceeds the sum

of $75,000, exclusive of interest and costs, and is between citizens of different states.

Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1332. Defendant is also liable to Plaintiff pursuant to the laws of the State of Illinois, which claims may be brought under the Supplemental Jurisdiction of this Court. 28 U.S.C. 1367.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the transactions between Plaintiff and Defendant occurred predominantly in this District, they involve real estate located in this District and Defendant maintains offices and transacts business in this District.

5.     In 2003, Plaintiff obtained an Equity Cash Line of Credit from Defendant's Predecessor, which was modified in 2006, resulting in a line of credit available to Plaintiff in the amount of $1,890,000, secured by a mortgage on real estate commonly known as 6201 N. Kilpatrick, Chicago, Illinois, in this district.

6.     In or about March, 2009, Plaintiff requested Defendant to modify that line of credit to reduce the interest charged on that loan.

7.     At the time he made that request, Plaintiff requested Defendant to provide him with the documents evidencing the then current status of that line of credit.

8.     Purportedly in response to Plaintiff's request, Defendant provided to him documents for an Equity Cash Line Mortgage which were for a different transaction in which Plaintiff was not involved.

9.     Despite repeated requests by Plaintiff, Defendant has steadfastly failed and refused to provide him with the documents which evidence the current status of the Equity Cash Line of Credit which Plaintiff obtained from Defendant's predecessor.

10.    On April 6, 2009, Defendant's predecessor confirmed to Plaintiff that the home equity

line of credit had been modified, and set forth the terms of that modification. Plaintiff

accepted that modification in writing  A copy of the document setting forth that

modification agreement is attached hereto as Exhibit "A" and incorporated by reference

11.   Although Plaintiff timely made payments on the line of credit, Defendant repeatedly

failed to credit the payments made by Plaintiff in a timely manner, and falsely reported to

various credit reporting agencies that Plaintiff was delinquent on this loan.

12.   Plaintiff complained of these failures by Defendant, which responded by sending an offer

to modify the line of credit in a manner which would double Plaintiff's monthly payments

and required him to pay $13,700 in closing costs.

13.   Plaintiff objected to this action in writing on November 16, 2009, and requested

Defendant to rectify these errors.  Plaintiff's request is attached hereto as Exhibit "B" and

incorporated herein.

14.   Subsequently, on a letter dated February 18, 2010, Defendant offered to allow Plaintiff to

pay off the line of credit by paying 60% of the outstanding balance by April, 2011.  A

copy of the document constituting that offer is attached hereto as Exhibit "C" and

incorporated by reference.

15.   Plaintiff attempted to obtain funds from other lending institutions in order to accept

Defendant's offer of February 8, 2010, but was unable to do so because the false

information supplied by Defendant to the various credit reporting agencies resulted in

false credit reports which stated that Plaintiff was not worthy of obtaining credit from

other lending institutions.

16.   After complaining of Defendant's false actions, which prevented him from obtaining

funds to take advantage of Defendant's offer, on June 17, 2011, Defendant sent to Plaintiff a proposed Line of Credit Modification Agreement. A copy of that document is attached hereto as Exhibit "D" and incorporated by reference.

17. Plaintiff informed Defendant that he would not sign Exhibit "D" because those documents referred to documents allegedly signed in 2006, which had never been signed by Plaintiff, and because the proposed modification called for an increase in the monthly payment on the line of credit, contrary to the promises which had been previously made.

18. Even though Plaintiff timely made payments on the line of credit, Defendant failed and refused to credit those payments to his account, and continued to falsely report to the various credit reporting agencies that Plaintiff was delinquent in his payments to this account, falsely stating that Plaintiff was 120 days past due on this account. This conduct has continued throughout Plaintiff's relationship with Defendant.

19. After Plaintiff's complaints to Defendant, Defendant sent to Plaintiff another proposed Line of Credit Modification Agreement on September 22, 2011. A copy of that proposed modification is attached hereto as Exhibit "E" and incorporated by reference.

20. Plaintiff informed Defendant that he would not sign Exhibit "E" because those documents again referred to documents allegedly signed in 2006 which had never been signed by Plaintiff, and it increased the payments on the line of credit even more, and falsely increased the principal balance on the loan.

21. On October 13, 2011, Plaintiff complained to Defendant in writing of the foregoing conduct, and the repeated false statements and failure of Defendant to timely credit Plaintiff's payments to his account, and the damage caused by Defendant's wrongdoing.

A copy of that complaint is attached hereto as Exhibit "F" and incorporated by reference.

22. As a result of Defendant's failure to properly credit the payments he made to the line of credit, Plaintiff repeatedly inquired as to the proper amount due for payments on the equity line of credit. Defendant refused to respond to his requests.

23. As a result of Defendant's refusal to inform Plaintiff of the proper amount due for the monthly payment on the line of credit, and the basis for that amount, Plaintiff again wrote to Defendant on January 25, 2012, complaining of Defendant's conduct. A copy of that communication is attached hereto as Exhibit "G" and incorporated herein by reference.

24. Defendant has failed and refused to respond to Plaintiff's communications, and has failed and refused to provide Plaintiff with information regarding the current status of this line of credit, and the amount due and owing on that loan.

25. As a result of Defendant's refusal to provide Plaintiff with a true and correct statement of the amount due on this loan, Plaintiff has ceased making payments on the line credit, for the reasons set forth in Exhibit "G."

26. On November 30, 2011, Plaintiff obtained a copy of his credit report from Equifax, which report shows the false information reported to Equifax by Defendant.

27. Plaintiff has attempted to apply for credit to other lending institutions, but has been denied credit due to the false information furnished by Defendant to Equifax and the other credit reporting agencies.

28. In addition to this line of credit with Plaintiff, Plaintiff had a mortgage loan with Defendant's predecessor secured by a mortgage on real estate located at 56 Fiesta Way, Fort Lauderdale, FL.

29. On May 19, 2009, Defendant's predecessor sent a forbearance agreement to Plaintiff, which Plaintiff accepted. A copy of this agreement is attached hereto as Exhibit "H" and incorporated by reference.

30. On May 19, 2009, Plaintiff sent a letter to Defendant's predecessor confirming that his loan modification resulting in a 30 year fixed loan at three percent (3%) interest would commence in three months as long as he eliminated his automobile payment of $1945 per month. A copy of that letter is attached hereto as Exhibit "I" and incorporated by reference.

31. Defendant's predecessor acknowledged Plaintiff's communication, in a letter dated May 26,2009, a copy of which is attached hereto as Exhibit "J" and incorporated herein.

32. Contrary to the agreement between the parties, on September 28, 2009, Defendant's predecessor rejected the loan modification in a letter dated September 28, 2009 a copy of which is attached hereto as Exhibit "K" and incorporated by reference.

33. Plaintiff made several inquiries to Defendant's predecessor attempting to determine the reason for the rejection of the loan modification. No person at Defendant's predecessor was able to give Plaintiff any reason for the rejection of the loan modification.

34. On November 24, 2009, Defendant sent a notice to Plaintiff that his loan modification had been rejected because he had failed to return the executed documents. A copy of that notification is attached hereto as Exhibit "L" and incorporated by reference.

35. At no time had Defendant provided Plaintiff with the documents to which reference is made in Exhibit "L", thus Defendant made it impossible for Plaintiff to comply with what

it contended was the reason for the rejection of the loan modification.

36.     Subsequent to the notification that Plaintiff's request for a loan modification had been

        rejected, he was notified that his loan modification had been approved, which

        modification increased his monthly payment, including escrow, from $6000 to $7409,

        and required closing costs in the amount of $13,729.34.   A copy of that notification is

        attached hereto as Exhibit "M" and incorporated by reference.

37.     Plaintiff refused to agree to this modification.

38.     Suddenly, on April 2, 2010, Defendant notified Plaintiff that it could not accept payments

        Plaintiff was attempting to make, because his monthly payment was $13,199.95.  A copy

        of such notification is attached hereto as Exhibit "N".

39.     This claim was totally false, having absolutely no basis in fact whatsoever.  Plaintiff was

        required to notify Defendant of its wrongful conduct.  Again, Defendant falsely informed

        various credit agencies that Plaintiff was delinquent in his payment, knowing full well

        that this was not true.

40.     On February 3, 2011, Defendant falsely informed Plaintiff that he had not obtained proof

        of hazard insurance on the property which was collateral for the loan.

41.     After receiving this notice, Plaintiff repeatedly communicated with Defendant, providing

        proof that he had maintained hazard insurance on the property.  Defendant finally

        acknowledged Plaintiff's proof of hazard insurance on the property in a letter dated July

        26, 2011, a copy of which is attached hereto as Exhibit "O."

42.     Despite acknowledging that Plaintiff had secured that hazard insurance, and stating that

        any charges to his account due to Defendant failure to acknowledge the existence of this

insurance, Defendant increased Plaintiff's monthly payment by Eighty ($80.00) per
month without justification.

43. Although Plaintiff repeatedly inquired why his monthly payment had been increased, no
one affiliated with Defendant could provide him with an explanation of such action.

44. Almost immediately, Defendant informed Plaintiff that he had not secured flood
insurance on the property which was collateral for the loan. Defendant finally
acknowledged that Plaintiff had secured proper flood insurance.

45. On September 1, 2011, Defendant informed Plaintiff that it could not accept his monthly
payment in the amount of $6156.83, because an additional amount of $80.84 was due and
owing. Copies of that notification to Plaintiff are attached hereto as Exhibits "O" and
"P" and incorporated by reference.

46. This notification was apparently caused by the fact that Defendant had raised the amount
of Plaintiff's monthly payment without notice to him.

47. When Plaintiff inquired as to the reason for this increase in his monthly payment, again
no one was able to provide him with a reason for this action.

48. On September 16, 2011, Defendant sent a notification to Plaintiff falsely stating that he
was delinquent by two monthly payments. A copy of that notification is attached hereto
as Exhibit "Q" and incorporated by reference.

49. On September 22, 2011, Defendant refused to accept the payment of $6156 tendered by
Plaintiff but returned to Plaintiff the amount of $4964.04, having improperly deducted
costs and fees from the amount he had tendered, with the indication that it would accept
no payments from him in any amount less than $6237.67. A copy of that notification is

attached hereto as Exhibit "R" and incorporated by reference.

50. On September 29, 2011, after receipt of Exhibits "Q" and "R,"Plaintiff visited Defendant's facility in person in Chicago, IL, where he spoke with Defendant's officer, Jose Melendez. Plaintiff offered to make the allegedly delinquent payment, and inquired why his payment had been increased, and of the status of his account.

51. Jose Melendez told Plaintiff that there had been a mistake, and refused to accept his payment, stating that he would "fix the problem."

52. Despite being told that he should not make any further payments, Plaintiff paid the amount of $6237 for each month of September, October and November, 2011.

53. Plaintiff repeatedly made inquiries as to why his monthly payment had been increased, and the status of his account.

54. On or about December 2, 2011, Plaintiff received a letter from Defendant, stating that Defendant could not determine the reason for any of the actions taken by Defendant regarding Plaintiff's account. A copy of that notification is attached as Exhibit "S" and incorporated herein.

55. During this time, on November 18, 2011, Defendant informed Plaintiff that since he had not obtained Comprehensive Wind coverage, Defendant had purchased such coverage for the property at a cost $37,730. A copy of that notification is attached as Exhibit "T" and incorporated herein.

56. Defendant falsely informed Plaintiff that it had purchased this insurance in August, which defendant knew was untrue when it made that statement.

57. Plaintiff was under no obligation to obtain Comprehensive Wind coverage for the subject

property. Defendant demand that he obtain such coverage, and its purported purchase of such coverage for an amount approximately ten times higher than the true cost of such coverage were unreasonable and totally without foundation, justification or excuse.

58. Nevertheless, even though he was not required to do so, Plaintiff obtained such Comprehensive Wind coverage, and provided Defendant with proof of such insurance.

59. Despite the fact that no Comprehensive Wind coverage was necessary for the property, and despite the fact that Plaintiff had obtained such coverage, Defendant increased Plaintiff's monthly payment through a demand for increased escrow deposits based upon the unnecessary and inflated alleged disbursement of $37,730 for such insurance. A copy of Defendant's notification to Plaintiff dated January 6, 2012, of such increased payments is attached hereto as Exhibit "U" and incorporated by reference.

60. All during this time that it was refusing to accept Plaintiff's monthly payments on this account, and erroneously informing him that he should not make payments, Defendant continued to make reports to credit reporting agencies that Plaintiff was delinquent in his payments, further damaging Plaintiff's credit. A copy of Defendant's acknowledgment dated February 24, 2012 of those facts is attached hereto as Exhibit "V" and incorporated by reference.

61. Finally, after repeated attempts to determine the reason for Defendant's increase of his monthly payments, Defendant finally acknowledged that the reason for the increase of his monthly payments was not valid.

62. At virtually the same time it was acknowledging that Plaintiff's protests that the actions taken by Defendant increasing his monthly payments and declaring his account

delinquent were false, Defendant then falsely claimed that Plaintiff had left the property

vacant.  A copy of that notification dated January 18, 2012, is attached hereto as Exhibit

"W" and incorporated by reference.

63.     When Plaintiff responded to Exhibit "W" by calling the number listed in that letter, he

discovered that the telephone number was to Defendant's collections department, which

insisted that he was delinquent in his payments on this account, and demanded payments

from him which were not due.

64.     As a result of Defendant's false claim that the property was vacant, Fireman's Fund, the

issuer of Plaintiff's property insurance, cancelled that policy, relying upon Defendant's

false statement that the property was vacant.  A copy of the notification of such

cancellation is attached hereto as Exhibit "X" and incorporated by reference.

## COUNT I–FAIR CREDIT BILLING ACT

65.     Plaintiff incorporates as though fully set forth herein Paragraphs 1 through 64 as

Paragraph 65 of Count I.

66.     Although Plaintiff has repeatedly notified Defendant of its numerous billing errors, as

required by law, and defendant failed to timely or properly respond, on multiple occasions

and each such violation gives rise to a distinct action under the CBA, 15 U.S.C. 1666, et.

seq.

## COUNT II–FAIR CREDIT REPORTING ACT

67.     Plaintiff incorporates as though fully set forth herein Paragraph 1 through 64 as Paragraph

67 of Count II.

68.     Defendant has repeatedly made false reports to various credit reporting agencies that

Plaintiff was delinquent in his payments to Defendant, when Defendant knew that said statements were false.

69. Although Plaintiff has repeatedly demanded that Defendant cease making false reports to credit agencies regarding the status of his accounts and his payments thereon, Defendant has refused to correct those reports and has repeated that information which it knows to be false.

70. Defendant's conduct in making such false reports to various credit agencies is a violation of the Fair Credit Reporting Act, as a result of which Defendant is liable to Plaintiff pursuant to the provisions of 15 U.S.C. 1681n.

71. Plaintiff has suffered actual damage by Defendant's conduct in that his credit has been impaired, which has interfered with the operations of his business of buying and selling real estate.

72. Defendant's conduct has been wilful, wanton, intentional and reckless, as a result of which Plaintiff is entitled to punitive damages.

### COUNT III–BREACH OF CONTRACT

73. Plaintiff incorporates as though fully set forth herein Paragraphs 1 through 64 as Paragraph 73 of Count III.

74. Defendant's conduct constitutes a breach if its agreements and contracts with plaintiffs.

75. As a result of Defendant's conduct, Plaintiff has been denied the benefit of agreements he has made with Defendant, and has been forced to make payments to Defendant in amounts which were not due to it.

76. Defendant's breaches were in bad faith, which entitle Plaintiff to punitive damages.

## COUNT IV–CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES

77. Plaintiff incorporates as though fully set forth herein Paragraphs 1 through 64 as Paragraph 77 of Count V.

78. The actions of Defendant, particularly the actions in failing to credit payments made by Plaintiff to his account and requiring Plaintiff to make additional deposits into his escrow accounts, were not warranted and constitute unfair and deceptive acts and practices as defined in the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

## COUNT V–DEFAMATION

79. Plaintiff incorporates as though fully set forth herein Paragraphs 1 through 64 as Paragraph 79 of Count IV.

80. Defendant's recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning plaintiff's credit history, the exact statements being unknown to Plaintiff at the present time, as the statements made by defendant are contained within Defendant's control, and the control of credit reporting agencies, the exact language of which Plaintiff will be able to obtain in discovery in this case.

81. Defendant's publishing of such false and inaccurate credit information has severely damaged the personal reputation of plaintiff, made it impossible for him to obtain credit for virtually any purpose, to operate his business of buying and selling real estate, and has caused him severe humiliation, emotional distress and mental anguish to plaintiffs.

82. Defendant was notified of the inaccuracy and falsity of its statement by plaintiff,

however, the defendant continued to issue and/or publish report(s) to third parties which contained inaccurate credit information about plaintiff.

83. Defendant acted with willful intent and malice to harm plaintiff, for which Plaintiff is entitled to punitive damages.

## COUNT VI–FRAUD

84. Plaintiff incorporates as though fully set forth herein Paragraphs 1 through 64 as Paragraph 84 of Count IV.

85. Defendant repeatedly refused to accept payments made by Plaintiff in a timely manner based on claims that the amount of monthly payment due had increased.

86. Each time Plaintiff challenged those assertions, Defendant assigned a different reason for the increase in monthly payment. Each reason given by Defendant for such increase was false. Nevertheless, Defendant continued to refuse to accept Plaintiff's payments, and charged him with costs and fees which were not due.

87. Defendant repeatedly reduced the amount in Plaintiff's escrow account with no accounting for the reason of such reduction and no evidence that it had made any legitimate payments from that escrow account. Defendant used these unexplained deductions to further demand increases in Plaintiff's monthly payment on the loans with Defendant.

88. Defendant's conduct, as alleged herein, constitutes a systematic scheme to charge and attempt to collect from plaintiff funds which he did not owe, and to unnecessarily force place insurance which was unnecessary and not required by any agreements between Plaintiff and Defendant, at a cost which was far in excess of any amount such insurance

14

would cost.

89. Defendant's conduct further resulted in fraudulent and false demands from Defendant that Plaintiff make payments to it which were not due.

90. As a result of Defendant's conduct, Plaintiff has been forced to make payments to Defendant in amounts which were not do to it.

91. Defendant's conduct was in bad faith, which entitles Plaintiff to punitive damages.

## RELIEF

As a result of the foregoing, Plaintiff is entitled to the following relief:

A. A temporary and permanent injunction against Defendant for its unfair and deceptive acts and practices and attorneys fees pursuant to the provisions of 815 ILCS 502/10a( c).

B. A mandatory injunction requiring Defendant to inform to all credit reporting agencies that it has falsely reported delinquencies and late payments by Plaintiff and affirmatively stating that Plaintiff is current on all loans, no late payments have been made, no fees or charges are due and there are no delinquencies, and to remove all adverse information previously submitted to those agencies.

C. A temporary and permanent injunction requiring Defendant to provide Plaintiff with a home equity line of credit secured by the real estate commonly known as 6201 N. Kilpatrick, Chicago, Illinois in an amount of 60% of the outstanding balance on that loan as of February 8, 2010, at the rate of one percent (1%) per annum.

D. An accounting of each of Plaintiff's accounts with Defendant to determine what amounts have been wrongfully charged to Plaintiff and what payments and assessments have been wrongfully rejected in order to determine the amounts actually due on Plaintiff's loans with

Defendant.

E.  Damages in an amount no less than $100,000 for the actual out of pocket monetary damages Plaintiff has suffered, including additional interest paid by Plaintiff which should not have been paid.

F.  Punitive Damages in an amount sufficient to punish Defendant for its wrongful conduct

G.  Attorneys Fees and court costs pursuant to 15 U.S.C. 1681n and 815 ILCS 502/10a ( c).

H.  Such other and further relief to which this Court finds Plaintiff is entitled to receive.


                                        S/ Wayne B. Giampietro
                                        Attorney for Plaintiff

Of Counsel

Poltrock & Giampietro
123 West Madison Street #1300
Chicago, IL 60602
(312)236-0606; Fax: (312)236-9264;
wgiampietro@wpglawyers.com