This document was prepared by Kyle Oman

**After Recording Return To:**
6750 Miller Road
Homeowners Assistance Department
LOC BR-YB58-01-3
Brecksville, Ohio 44141
Toll-Free: (866) 622-2657

_____ [Space Above This Line For Recording Data] _____

# HOME EQUITY LINE OF CREDIT MODIFICATION AGREEMENT

This Home Equity Line of Credit Modification Agreement (this "Modification Agreement") is made as of **9/22/2011**, between **JEFFREY M FOSTER** (individually and collectively, the "Borrower") and PNC Bank, National Association\*, for itself, its successors and/or assigns, (the "Lender").

If Borrower's representations, acknowledgments, agreements and preconditions to modification in Section 1 continue to be true in all material respects, then this Modification Agreement will, as provided in such Section 1, amend and supplement (1) the home equity line of credit agreement dated **May 31, 2006**, as it may previously have been amended, (the "Agreement" and (2) the Mortgage, Deed of Trust or Security Deed, (the "Security Instrument"), bearing the same date as and securing, the Agreement recorded in Book/Page or Instrument Number 0617308074, of the **COOK** County Records of IL which covers the real and personal property described in the Security Instrument and defined therein as the "Property", commonly known as **6201 N KILPATRICK AVE CHICAGO IL 60646**, the real property described being set forth as follows:
SEE ATTACHED EXHIBIT "A"

The Agreement and Security Instrument together, as they may previously have been amended, are referred to as the "Loan Documents." The Borrower and Lender are sometimes collectively referred to together as the "Parties" and each as a "Party." Capitalized terms used in this Modification Agreement that are not defined herein have the meaning given to them in the Loan Documents.

\*If another lender is identified in the Loan Documents, PNC Bank, National Association is the successor by merger to such lender.

v1.4

1

*Ex. A (2)*

This Modification Agreement will not take effect to modify the Loan Documents unless the preconditions set forth in Section 1 have been satisfied.

Please Note: Items preceded by "☐" are not applicable unless marked "☒" or the equivalent.

In consideration of the mutual promises and agreements exchanged, and intending to be legally bound, the Parties agree as follows:

1. **Borrower's Representations, Acknowledgments and Agreements and the Preconditions to Modification.**
   Borrower represents, acknowledges and agrees that:

   a. Under penalty of perjury, all documents and information provided by Borrower to Lender are true and correct.

   b. Borrower will sign and return this Modification Agreement as required by the Lender on or before **October 2, 2011.**

   c. If, prior to the Modification Effective Date (as defined in Section 2), (i) the Lender determines that Borrower's representations in Section 1(a) are no longer true and correct, or (ii) Borrower has not signed and returned this Modification Agreement as required in Section 1(b), the Loan Documents will not take effect, this Modification Agreement will terminate and the Lender will have all of its rights and remedies as provided by the Loan Documents.

   d. The Loan Documents will not be modified unless and until (i) the Lender has received any title endorsement(s), title insurance product(s), subordination agreement(s) and/or mortgage insurer approval(s) that the Lender deems necessary to ensure that the Security Instrument, as modified, retains the same lien position that it was in prior to the Modification Effective Date and is fully enforceable and that any mortgage insurance policy is fully enforceable and (ii) the Modification Effective Date has passed. The Lender is not required to make any modification of the Loan Documents if the Borrower fails to meet any one of the requirements under this Modification Agreement.

   e. As of the Modification Effective Date set forth in Section 2, Borrower's ability to obtain loans or Advances under the Agreement is permanently terminated. If Borrower's ability to obtain new loans or Advances was terminated previously, Borrower acknowledges that no additional loans or Advances may be obtained.

   f. If the Lender has paid costs and expenses to third parties for flood insurance premiums on the Property and/or court costs and attorneys' fees to enforce Lender's rights under the Loan Documents, the total amount of these costs and expenses is included in the New Principal Balance set forth in Section 2(b).

   g. If Borrower purchased credit insurance or the Line of Credit Protection Plan under the Agreement, such credit insurance or Line of Credit Protection Plan will be cancelled as of the Modification Effective Date set forth in Section 2.

   h. If the Agreement includes late charges or Other Charges, on the Modification Effective Date set forth in Section 2, Lender will waive all unpaid late charges and Other Charges that remain unpaid under the Agreement. If the Loan Documents are not modified, Lender will not waive the unpaid late charges and Other Charges. Lender reserves the right to charge late charges, Return Check Fees or returned payment fees after the Modification Effective Date, if applicable, under the terms provided in the Agreement.

2

i.   Borrower has requested that Lender cancel all Fixed Rate Lock Advances and Fixed Rate Parts that Borrower may have obtained and consolidate their outstanding balances into the New Principal Balance as defined in Section 2(b).  **The interest rates applicable under this Modification Agreement as set forth in Section 2 may be higher than the interest rate that would have applied to the Fixed Rate Lock Advances and Fixed Rate Parts under the Agreement.**

☐   j.   The Lender has forgiven a portion of the unpaid loans or Advances owing under the Agreement, in the amount of        .  The forgiven amount will be reported to the Internal Revenue Service and may have tax consequences. Borrower should seek guidance from a tax professional.

2.   **The Modification.**  If Borrower's representations in Section 1 continue to be true in all material respects and the preconditions in Section 1 have been met, the Loan Documents will automatically become modified on **October 7, 2011** (the "Modification Effective Date").  The first modified monthly payment will be due on **October 21, 2011,** and continuing  on the payment due dates determined under the Agreement until the Maturity Date.  Borrower understands and agrees that:

a.   The date on which all amounts owing under this Modification Agreement are due is called the "Maturity Date".  The Maturity Date is **April 21, 2046**, which may have been extended beyond the maturity date in the Loan Documents.

b.   Borrower's new principal balance under this Modification Agreement is **$1,899,715.73** (the "New Principal Balance").  The New Principal Balance includes any amounts that will be past due as of the Modification Effective Date, and consists of: (i) the sum of (A) the unpaid principal balance of the loans or Advances made to Borrower under the Agreement, including any Fixed Rate Lock Advances and Fixed Rate Parts, plus (B) any unpaid finance charges, plus (C) any costs and expenses paid to third parties as described in Section 1(f).  **Borrower understands and agrees that by agreeing to include any costs and expenses paid to third parties in the New Principal Balance, such amount will accrue interest based on the interest rates in effect under this Modification Agreement.  $0.00 of the New Principal Balance, consisting of the accrued unpaid interest, shall be deferred (the "Deferred Interest") and shall be payable as provided in the last sentence in this section.**  Borrower will not pay interest on the Deferred Interest prior to the Maturity Date (unless, as a result of Borrower default, the entire New Principal Balance is due) or make monthly payments on the Deferred Interest.  Borrower must pay the Deferred Interest by the earliest of:  (i) the date Borrower sells or transfers an interest in the Property; (ii) the date the Borrower pays or is required to pay the entire Interest Bearing Principal Balance (as defined below) or refinances the Property or (iii) the Maturity Date.

c.   The New Principal Balance less the Deferred Interest shall be referred to as the "Interest Bearing Principal Balance", and this amount is **$1,899,715.73**.

d.   Interest at the rate of 1% will begin to accrue on the Interest Bearing Principal Balance as of **October 7, 2011** for the first **5** years.  The monthly payment of principal and interest for the first **5** years will be **$4,803.55** and the first new monthly payment will be due on the date set forth in the second sentence of this Section 2.

e.   During year 6 and continuing thereafter until the Maturity Date, interest at the rate of **5.25%** will accrue on the Interest Bearing Principal Balance as of **September 22, 2016**.  The monthly payment of principal and interest for year 6 and thereafter until the Maturity Date will be approximately **$9,478.00** and the first new monthly payment will be due on **October 21, 2016**.

3

f.  On the Maturity Date, the final payment under this Modification Agreement will be an amount equal to (i) the unpaid balance of the New Principal Balance, <u>plus</u> (ii) all accrued and unpaid interest on the New Principal Balance, <u>plus</u> (iii) any other amounts owed under the Loan Documents.

g.  **The interest rates applicable to the Interest Bearing Principal Balance as set forth in this Section 2 may be higher than the interest rate that would have applied under the Agreement.**

h.  As used in this Modification Agreement, the term "Billing Cycle" means the days between the closing date for the last monthly statement sent to Borrower and the closing date for the Borrower's current statement. Interest charged under this Modification Agreement will be computed on an "average daily balance" basis. The "average daily balance" is calculated by adding all the "daily balances" during the Billing Cycle and then dividing the total by the total number of days in the Billing Cycle. The "daily balance" is calculated by taking the beginning balance of the Interest Bearing Principal Balance each day and subtracting any payments, unpaid interest, late charges, Return Check Fees and returned payment fees. Interest owed under this Modification Agreement will be computed:

    ☒  i.  by multiplying the "average daily balance" for the Billing Cycle by $1/12^{th}$ of the applicable interest rate set forth in Section 2(d) or Section 2(e) above.

    ☐  ii.  by multiplying the "average daily balance" for the Billing Cycle by the number of days in the Billing Cycle and multiplying the product by $1/365^{th}$ (or $1/366^{th}$ in a leap year) of the applicable interest rate set forth in Section 2(d) or Section 2(e) above.

i.  Monthly payments will be applied first to all unpaid interest on the Interest Bearing Principal Balance, then to any unpaid late charges, Return Check Fees and returned payment fees (if applicable under the Agreement) and then to the Interest Bearing Principal Balance. If Borrower makes a partial prepayment of principal, the Lender may apply that partial prepayment to any unpaid late charges, Return Check Fees and returned payment fees (if applicable under the Agreement) and then to the Interest Bearing Principal Balance. To the extent that the principal prepayment is equal to or exceeds the Interest Bearing Principal Balance, the prepayment will be applied to Deferred Interest. Prepayments will not change the due dates or amounts of monthly payments.

j.  If Borrower elected the Automatic Payment Plan under the Agreement or authorized automatic payment of the Agreement from a deposit account ("Automatic Payment Program"), the Borrower may be required to sign a new authorization to continue the Automatic Payment Program once the monthly payment changes under Section 2(d) and Section 2(e). If the Automatic Payment Program is cancelled, that cancellation will not affect the interest rate required to be paid under this Modification Agreement.

k.  Borrower will be in default under this Modification Agreement if: (i) Borrower fails to make any payment under Section 2 of this Modification Agreement when due; (ii) Borrower fails to keep any of Borrower's agreements under Sections 1, 2 or 3 of this Modification Agreement; (iii) Borrower has provided false or misleading information to Lender; or (iv) Borrower's action or inaction adversely affects the Property or Lender's rights in the Property.

l.  In the event of a default under the Loan Documents, as modified by this Modification Agreement, interest will accrue on the unpaid amount of the New Principal Balance, including after the entire balance is declared to be due in full, at the rate set forth in Section 2(d) or Section 2(e) as applicable when the default occurred.

    m.  If Borrower is in default, in addition to any other rights and remedies Lender has under law and subject to any right Borrower may have to cure the default under applicable law, Lender may do any of the following to the extent permitted by law: (a) require immediate payment of the entire unpaid New Principal Balance in full without demand or notice, unless otherwise required by applicable law and (b) recover all expenses related to retaking, holding, preparing for sale and selling the Property and reasonable collection costs, attorneys' fees and legal expenses as permitted by 11 U.S.C. 506 and any other applicable law.

    n.  Borrower's ability to obtain loans or Advances under the Agreement is permanently terminated.

    o.  If Borrower purchased credit insurance or the Line of Credit Protection Plan under the Agreement, such credit insurance or Line of Credit Protection Plan is cancelled.

    p.  The terms in Section 2 will supersede any provisions to the contrary in the Loan Documents, including, but not limited to, the provisions for a variable interest rate or determination of the amount of any finance charge.

3.  **Additional Agreements.** Borrower understands and agrees to the following:

    a.  All persons who signed the Loan Documents, or their authorized representative(s) have signed this Modification Agreement, unless: (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the Property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the Property need not sign this Modification Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing. Any Borrower who signs this Modification Agreement but did not sign the Agreement is not personally obligated to pay the sums secured by the Security Instrument as modified by this Modification Agreement.

    b.  This Modification Agreement supersedes the terms of any modification, forbearance or workout plan that the Borrower has previously entered into with Lender.

    c.  Except as expressly modified by this Modification Agreement, Borrower will comply with and is bound by all covenants, agreements, and requirements of the Loan Documents.

    d.  The Loan Documents as modified by this Modification Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed and remain in full force and effect. Lender's rights include, but are not limited to, the right to charge late charges, Return Check Fees or returned payment fees if and to the extent provided under the Agreement. If Borrower's monthly statement contains a "billing rights statement," Borrower agrees and understands that such statement is no longer applicable, and the terms and conditions set out in such billing rights statement do not apply to this Modification Agreement.

    e.  Nothing in this Modification Agreement will be understood or construed as a satisfaction or release, in whole or in part, of the obligations in the Loan Documents, or to satisfy or release the Security Instrument, in whole or in part.

f.   As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, Lender shall not exercise this option if applicable law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give Borrower notice that all sums secured by the Security Instrument are due in full. The notice will provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay such amount. If Borrower fails to pay the amount owed prior to the expiration of this period, Lender may exercise any remedies permitted by the Security Instrument.

g.   As of the Modification Effective Date, Borrower understands that Lender will only allow the transfer and assumption of the Loan Documents, including this Modification Agreement, to a transferee of the Property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan Documents including this Modification Agreement. Except as noted in this Section 3(g), this Modification Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

h.   Borrower will cooperate fully with Lender in obtaining any title endorsement(s), title insurance product(s) and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the Security Instrument, as modified, retains the same lien position that is in effect prior to the Modification Effective Date and/or is fully enforceable upon modification.

i.   Borrower will execute and deliver such other documents as may be reasonably necessary to either: (i) put into effect the terms and conditions of this Modification Agreement or (ii) correct the terms and conditions of this Modification Agreement if an error is detected after the Modification Effective Date. Borrower understands that a corrected Modification Agreement or letter agreement containing the correction will be provided to Borrower for Borrower's signature. At Lender's option, this Modification Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrected Modification Agreement or letter agreement, the terms of the original Loan Documents shall continue in full force and effect and such terms will not be modified by this Modification Agreement.

j.   Borrower is solely responsible for the payment of any federal, state and/or local taxes with respect to any principal forgiveness, if provided in Section 1(j). Borrower understands, agrees and acknowledges that Lender has not made any representations to the Borrower concerning the taxability and/or non-taxable status of the any such principal forgiveness.

k.   If any document related to the Loan Documents and/or this Modification Agreement is lost, misplaced, misstated, inaccurately reflects the true terms and conditions of the loan as modified, or is otherwise missing, Borrower will comply with the Lender's request to acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary (all such documents are the "Documents"). Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

6

1.  **If Borrower consents to receiving calls as described in this section, please sign below:** Borrower consents to receiving calls, including calls using an automatic telephone dialing system and/or an artificial or prerecorded voice, and text messages from Lender or any of its affiliates, agents or third party representatives at any and all of Borrower's telephone numbers, including, but not limited to, Borrower's wireless (mobile/cellular) number, or any cell phone number Borrower may provide to Lender, for any purpose related to the Borrower's Account, including servicing purposes and debt collection purposes, with respect to this Modification Agreement and the Loan Documents, the Account related to the Loan Documents and any other account at Lender or any of its affiliates. These calls and messages may incur access fees from Borrower's cellular provider. Lender may monitor telephone calls with Borrower to assure quality service.

_____
Borrower signature

_____
Borrower signature

[SIGNATURE PAGES TO FOLLOW]

7

In Witness Whereof, the Borrower(s) have executed this Modification Agreement.

_____ (Seal)

**JEFFREY M FOSTER**

_____

Date

_____ (Seal)

_____

Date

_____ [Space Below This Line For Acknowledgments] _____

STATE OF _____ ) SS

COUNTY OF _____ )

On _____, before me, _____ personally appeared **JEFFREY M FOSTER**
, personally known to me (or proved to me on the basis of satisfactory evidence) to the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that his/her/their signature(s) on the instrument to the person(s) or the entity upon behalf of which the person(s) acted executed the instruments.

I certify under PENALTY OF PERJURY under the law of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Printed Name: _____
My Commission Expires: _____

8

In Witness Whereof, the Lender has executed this Modification Agreement.

PNC BANK:

By: _____
[

Its: Authorized Representative

_____ [Space Below This Line For Acknowledgments] _____

STATE OF OHIO                                          )          ss:

COUNTY OF CUYAHOGA                      )

On this, the _____ day of _____ , _____ before me, a Notary Public, the undersigned officer, personally appeared _____ , who acknowledged himself/herself to be an authorized signer of PNC Bank, N.A. and that he/she, as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of said bank as such officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public: _____
Printed Name: _____
My Commission Expires: _____
County of Residence: _____

9



VOELKER
LITIGATION GROUP

**VIA E-MAIL AND U.S. MAIL**

October 13, 2011

Mr. Thomas Bell
Vice President
Loss Mitigation
PNC Bank
6750 Miller Road
Brecksville, Ohio 44141
thomas.bell@pnc.com

*Re: Home Equity Loan/Jeffery M. Foster, 6201 N. Kilpatrick Avenue, Chicago,
Illinois 60646-5070, Account Number 4489619840201544*

Dear Mr. Bell:

This is a follow-up to our correspondence to you dated September 30, 2011, in the above-referenced matter. As you know, we represent Jeffrey M. Foster, a current borrower of PNC Bank ("PNC").

We have now had an opportunity to review the file materials provided to us by Mr. Foster. These materials evidence, in excruciating detail, the history of his former banking relationship with National City Bank ("National City"), as well as his current relationship with PNC. We understand that PNC acquired the assets of National City in December 2008, including loans to Mr. Foster.

The file provided to us by Mr. Foster reveals what can only be described as a pattern of continuous and outrageous conduct on the part of both National City and PNC. In the course of this two-year long struggle with PNC, Mr. Foster has been repeatedly and falsely accused of, and reported to the credit bureaus for, making late or incomplete payments and has seen his credit score plummet by as much as 250 points. Mr. Foster has received no less than ten (10) letters from National and PNC apologizing for their conduct and promising to rectify the same. Notwithstanding those letters, PNC has continued to engage in the same conduct again and again.

PNC has also misrepresented Mr. Foster's loan balances and continues to do so. PNC has also been unable to adequately document a home equity loan and PNC currently shows a loan number of #0000000000; obviously an invalid loan number. There are valid questions about the terms of the actual loan at issue.

This inaccurate and irresponsible record-keeping and reporting has made it all but impossible for Mr. Foster to refinance his loans currently with PNC. Mr. Foster has

Exhibit F

Page 2
October 13, 2011
Mr. Thomas Bell
*Re: Home Equity Loan/Jeffery M. Foster, 6201 N. Kilpatrick Avenue, Chicago, Illinois 60646-5070, Account Number 4489619840201544*

repeatedly sold assets at a fraction of their fair market value to qualify to modify or refinance his loans with PNC only to be told after the fact by PNC, or by PNC's loan-servicer, that the deal was no longer on the table, or erroneously that he had failed to qualify. Indeed, when PNC did follow through and process an agreed-upon loan modification, PNC changed, at the eleventh-hour, the agreed terms and sought to require Mr. Foster to make payments which he was obviously financially incapable of making and demanding exorbitant "closing costs" in excess of $13,000.

Apparently acknowledging the severity of its actions and the economic harm that Mr. Foster has sustained as the result therefrom, by correspondence to Mr. Foster dated February 18, 2010, PNC offered to "accept 60% of the outstanding balance on the referenced equity reserve line of credit as a settlement in full at any time within 24 months of your modification agreement on the line dated April 6, 2009." While Mr. Foster accepted this offer, he was unable to act on it as PNC had so badly damaged his credit that he was unable to obtain financing, even at a 60% level. Of course, under Illinois law, one party to an agreement cannot make the other's performance impossible (*See YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 403 Ill. App. 3d 1, 6 (1st Dist. 2010), citing *Leonard v. Autocar Sales & Service Co.*, 392 Ill. 182, 187 (1945)).

Mr. Foster would like to bring this matter to conclusion once and for all. As such, he has authorized us to offer to resolve all of his disputes with PNC in exchange for PNC's agreement to refinance the home equity line of credit at sixty (60) percent of the current loan balance, with an interest rate of one (1) percent fixed over a forty (40) year term. Of course, the parties would exchange mutual releases for all conduct occurring prior to the date of this agreement with PNC, preserving, of course, claims related to the existing loans on a go-forward basis.

Please let us know within ten (10) days whether this proposal is acceptable.

Very truly yours,
Voelker Litigation Group

Daniel J. Voelker

cc: Mr. Jeffrey M. Foster

# RE: equity line

From: **jeffrey foster** (highlandbreeze@hotmail.com)
Sent: Wed 1/25/12 10:21 AM
To: thomas.bell@pnc.com

Mr. Bell,

As usual. PNC attempts to modify the facts to cover for their bad behavior. Either you have a selective memory of this, or you are being deceptive.
You were trying to get me to sign the original modification that I said countless times, was inaccurate. Making payments was a separate issue. In fact, I have emails
to another employee asking for a payment directions.

I find your response disingenuous at best. You asked to work something out. My attorney gave you permission. All you did was stall the process for a month, then
said you were not willing to do anything additional than offered before. Anyone that reads our emails will agree with MY explanation, not yours. If I didn't
send that email to you, you would have continued the charade longer. It makes no sense, what so ever, that your suggestion would be a solution. That would
mean that once again, you are ignoring my concerns and objections.

After being told to make the original payment during your lengthy renewal process, PNC refused to count them. You did not even give credit for the actual
payment. I would love to hear your "spin" on that.

I contacted Randy Holland 2 months before the modification expired. He told me to call at the conclusion of it because they cannot do anything about it now.
In the end, you did not send your final version until the end of September. 5 months later.

You can try to create your own realty, but it never works. I have 3 emails specifically asking what you want me to do in the mean time. You do not address
the issue in your response, just as you haven't done so in THIS email. You have ignored 2 questions again! You ignore questions you do not want to answer.
You ignored the question 3 times before we stopped talking, and before the discussion you refer to above. It is dated and verified!

To state again, this is yet another attempt to make payments that is ignored. Not that you count them anyway, as illustrated beyond doubt in
my loan statements. It is obvious that making payments will not play into your future strategy.

Bottom line, your statement will not hold. I have tried to make payments. PNC will not let me. In addition, PNC does not apply credit for the payments I DO make.

Jeff Foster                                          Exhibit G

---

To: highlandbreeze@hotmail.com
Subject: RE: equity line
From: thomas.bell@pnc.com
Date: Wed, 25 Jan 2012 09:42:27 -0500

Good morning Mr. Foster -- in regard to the explanation on the payments on your expired modification:
I e-mailed you on November 15th and inquired as to the best times to reach you that week, because I

was out of the bank the following week. As I mentioned in the e-mail, I wanted (along with Randy Holland, with whom you spoke about a new modification on the equity line) to review with you what had transpired on the payment process since the conclusion of your previous modification. You wrote back later that same day and advised that you did not want to discuss any thing other than what was in your counsel's letter. I had previously responded to your counsel's offer by e-mail on November 7th and advised you again on November 16th that I understood, apologized for not understanding and saw there was no reason for us to communicate further your Equity Line of Credit.

If you have questions regarding the individual with whom you had a conversation on your e-mail below, I would refer you to Margie Torres, Senior Real Estate Specialist, who is now working the account. She can be reached at 1-866-622-2657, extension 66696.

If you still have any interest in discussing what I offered to discuss with you (with Randy Holland) in the first paragraph of this e-mail, I would be happy to set up a time to do so. I will be out of the bank tomorrow and Friday, returning on Monday, January 30th.
*T. L. Bell*
***Vice-President and Homeowners' Assistance Underwriting Manager***
*Phone:  440-546-6744*
*Fax: 1-866-641-2691*
*thomas.bell@pnc.com*

| From: | jeffrey foster <highlandbreeze@hotmail.com> |
|---|---|
| To: | <thomas.bell@pnc.com> |
| Date: | 01/24/2012 05:14 PM |
| Subject: | RE: equity line |

Mr. Bell

As you remember, I asked you on 5 different occasions what I should do in regard to payment during this process. I have three requests documented through
emails to you. You did not respond, or give me any direction on what to do while we are resolving this.

Regardless of what our attorneys are doing right now, I still am a customer of PNC and have rights as a united States Citizen.

It is MY business, and it is YOUR obligation, to tell me why I have walked out and had a conversation with 2 people on my property sent by PNC.
The second one was today January 24th at 4:00pm.

I have tried hard to resolve my problems with PNC, to no avail. I have just caught PNC mortgage on 2 attempts to create a situation that didn't exist
on a mortgage with them. After providing the proof to the executive office, I have heard silence. Your company has falsely accused me of not maintaining my
properties (which is ridiculous), and other ploys to seek advantage.

I want to know why you are sending people to my property immediately.

Please respond immediately with an answer.

Jeff Foster

To: highlandbreeze@hotmail.com
Subject: RE: equity line
From: thomas.bell@pnc.com
Date: Wed, 16 Nov 2011 08:37:28 -0500

I apologize Jeff and apparently I misunderstood your e-mail.  I had already responded to you on November 7th regarding the proposal that was sent by your counsel.  The proposal to modify 60% of the balance at a 1% APR rate over a 40-year period is something the bank cannot approve.  The modification that was presented to you by Randy Holland in April of this year upon the expiration of your previous modification is something the bank is willing to do.

Again, I apologize for the misunderstanding and now completely understand that you feel there is no reason to communicate further on the modification on your Equity Line of Credit.
*T. L. Bell*
*Vice-President and Homeowners' Assistance Underwriting Manager*
*Phone:  440-546-6744*
*Fax: 1-866-641-2691*
*thomas.bell@pnc.com*

| From: | jeffrey foster <highlandbreeze@hotmail.com> |
|---|---|
| To: | <thomas.bell@pnc.com> |
| Date: | 11/15/2011 10:53 AM |
| Subject: | RE: equity line |

Do you mean my third paragraph? If so, that is not the issue at this time. It is the offer in my attorneys letter that i am interested in discussing. If it is the
topic discussed in the 3rd paragraph, it will be a waste of our time, as I am not interested in anything other than the topics discussed in my attorneys letter.

Please advise.

Thanks, Jeff

To: highlandbreeze@hotmail.com
CC: randy.holland@pnc.com
Subject: RE: equity line
From: thomas.bell@pnc.com

Date: Tue, 15 Nov 2011 08:03:10 -0500

Jeff - I take every customer issue that I have worked on seriously and am 100% ready to discuss the modification you refer to in your second paragraph below. I would like to include Randy Holland in the conversation since he actually had much more direct conversation with you than I. If you provide a couple of best times to reach you this week, I will contact you. I am out of the office from the 21st through the 28th, so would prefer to accomplish it this week if at all possible.

*T. L. Bell*
*Vice-President and Homeowners' Assistance Underwriting Manager*
*Phone: 440-546-6744*
*Fax: 1-866-641-2691*
*thomas.bell@pnc.com*

| | |
|---|---|
| From: | jeffrey foster <highlandbreeze@hotmail.com> |
| To: | <thomas.bell@pnc.com> |
| Date: | 11/14/2011 12:43 PM |
| Subject: | RE: equity line |

Mr. Bell,

Please don't take this the wrong way, but I am beginning to believe that PNC is not taking this entire situation(along with my attorney correspondence) seriously.

We made it very clear what our position is. I am willing to do whatever it takes to correct the fraction of my daughters' future that was permanently robbed
from them in 2006 and beyond. I can prove beyond a doubt that PNC paid the tiny settlement and removed the inaccurate defaults off of
my credit over 7 months after the due date set by the judge in 2007. That was after I had to pay for, and initiate further action in order to get PNC to perform as to the agreement. I sustained much more damage as a result. Immediately following that, I have been wrongly abused on a nonstop basis. I have been prevented from ever recovering from the initial damage resulting from your company's wrong doing.

I have wasted 6 months waiting for a modification that is not acceptable and states false information. I have been proactive for 5 years, fighting
for my life against your company's malicious conduct( I did not say you). The information you refer to can easily be stated via email. Please explain your
conclusions via email.

I will be happy to talk to you if you agree to take the situation and my position seriously. I have been told many times in the past year by your company employees to stop talking about it when I bring it up. I will not be bullied or intimidated any more. I am patiently waiting before I initiate the process that will no doubt correct this issue. Per your request, I am holding off but I believe it will ultimately be a waste of time. I hope you prove me wrong.

Sincerely,

Jeff Foster

To: highlandbreeze@hotmail.com
Subject: RE: equity line
From: thomas.bell@pnc.com
Date: Mon, 14 Nov 2011 08:04:02 -0500

good morning Jeff - we need to have a phone conversation. I believe I can explain what appears to be a misconception as far as your payments go and where the previous modifications stand. I am in all week this week, but am in meetings from 10:00 through the end of today. Can you give me a couple of times tomorrow to call you? I will do my best to accommodate your schedule. Thank you.
*T. L. Bell*
*Vice-President and Homeowners' Assistance Underwriting Manager*
*Phone: 440-546-6744*
*Fax: 1-866-641-2691*
*thomas.bell@pnc.com*

| From: | jeffrey foster <highlandbreeze@hotmail.com> |
|---|---|
| To: | <thomas.bell@pnc.com> |
| Date: | 11/10/2011 11:36 AM |
| Subject: | RE: equity line |

Mr. Bell,

Since you are obviously setting the stage for the future, lets clarify a fact before this gets out of hand.

I emailed twice asking about the payment. You added to the principal to the point that the only payment do was one on October 24th.
I emailed you asking what to do. You told me you would get back to me. You have extended that date twice. Now you use that late status as
something that is my fault? As I said, adjust the principal before you ask for accrued interest. You can't have it both ways.

The sooner you guys deal with this in an ethical manner, the easier it will be. This technique your company implements is not only familiar to
me, it is predictable. Hence my email asking what to do.

Jeff

---

To: highlandbreeze@hotmail.com
Subject: RE: equity line
From: thomas.bell@pnc.com
Date: Thu, 10 Nov 2011 08:57:37 -0500

Jeff - The line of credit is currently delinquent and is being reported to the credit bureaus as it is being paid.   As you know, from previous modifications that we have done for you, when the modification is done and the mod agreements are signed and in effect, the account is brought current, and as an accommodation,  the delinquency is removed from the credit bureau.  That has always been our practice on the Equity Line of Credit and will continue.

*T. L. Bell*
***Vice-President and Homeowners' Assistance Underwriting Manager***
*Phone:  440-546-6744*
*Fax: 1-866-641-2691*
*thomas.bell@pnc.com*

| | |
|---|---|
| From: | jeffrey foster <highlandbreeze@hotmail.com> |
| To: | <thomas.bell@pnc.com> |
| Date: | 11/09/2011 10:55 AM |
| Subject: | RE: equity line |

---

I can, and will, prove that May Isaiah told me that both Randy and Paige were not only gone, but she didn't know where. An absolute lie.

I can also prove, she told me she was instructed to call me by you. It is obvious that your company will say or do anything to bolster your case, as proven beyond
a doubt in 2006. I was also told that you would fix all of the errors on my credit report this time AFTER I signed documents you want me to sign.

Illegal, unethical, manipulative....................................Unbelievable.

---

To: highlandbreeze@hotmail.com
Subject: RE: equity line
From: thomas.bell@pnc.com
Date: Wed, 9 Nov 2011 10:40:35 -0500

Jeff - I would only respond that there is absolutely no deception, and certainly no attempt to insult you as a customer,  on my part.  I did not tell you that Randy Holland was not here anymore and I did not ask Mary Isaiah to contact you.  Randy Holland works in Homeowner Assistance, always has, and

Mary is a supervisor in Consumer Default.   I regret that you were told differently about Randy.
*T. L. Bell*
*Vice-President and Homeowners' Assistance Underwriting Manager*
*Phone:  440-546-6744*
*Fax: 1-866-641-2691*
*thomas.bell@pnc.com*

| From: | jeffrey foster <highlandbreeze@hotmail.com> |
|---|---|
| To: | <thomas.bell@pnc.com> |
| Date: | 11/09/2011 10:31 AM |
| Subject: | RE: equity line |

More deception. I was told that Randy doesn't work there anymore. That obviously was another lie.
You sent this Mary Izea lady after me as if
she was the smooth talking that could make this go away. Insulting.

To: highlandbreeze@hotmail.com
CC: randy.holland@pnc.com; brian.lutton@pnc.com
Subject: Re: equity line
From: thomas.bell@pnc.com
Date: Wed, 9 Nov 2011 07:48:16 -0500

Good morning Jeff - I promised you an answer by the close of business today and I am going to do my best in that regard.   The proposal that was presented to us regarding your balance on the home equity line to be modified at 1% APR for 40 years is something that the bank cannot approve at this time.  The proposal that was provided you by Randy Holland that was discussed previously is something that we are prepared to do and offer.  I am continuing to try and gather the facts from PNC Mortgage regarding your loans with them and there is the possibility that I would be able to look at something additional, but simply need more time in order to look at it more globally.

If you would like additional information regarding the modification that Randy spoke with you about,  he continues to work in our Homeowner Assistance Department and can be reached at 440-546-6843.   In regard to the more global approach to the situation, I would hope to be able to get back to you by the close of business on Wednesday, November 16, 2011.    Jeff, this not an attempt to stall for time, it is simply a request to have all the facts in hand to make a very important decision.  If  you require additional information on the contents of this e-mail, I can be reached at 440-546-6744.

*T. L. Bell*
*Vice-President and Homeowners' Assistance Underwriting Manager*
*Phone:  440-546-6744*

Fax: 1-866-641-2691
thomas.bell@pnc.com

From:        jeffrey foster <highlandbreeze@hotmail.com>

To:          <thomas.bell@pnc.com>

Date:        11/07/2011 02:57 PM

Subject:     equity line

Hi Mr. Bell,

Just letting you know that another law firm has joined us and will be handling the future litigation. If you need that contact information, let me know.
I know you are going to contact me next, but I just didn't want anything to fall through the cracks. Still feel free to email me for the time being.

Thank you,
Jeff Foster
The contents of this email are the property of PNC. If it was not addressed to you, you have no legal right to read it. If you think you received it in error, please notify the sender. Do not forward or copy without permission of the sender. This message may contain an advertisement of a product or service and thus may constitute a commercial electronic mail message under US Law. The postal address for PNC is 249 Fifth Avenue, Pittsburgh, PA 15222. If you do not wish to receive any additional advertising or promotional messages from PNC at this e-mail address, click here to unsubscribe.
https://pnc.p.delivery.net/m/u/pnc/uni/p.asp By unsubscribing to this message, you will be unsubscribed from all advertising or promotional messages from PNC. Removing your e-mail address from this mailing list will not affect your subscription to alerts, e-newsletters or account servicing e-mails.
The contents of this email are the property of PNC. If it was not addressed to you, you have no legal right to read it. If you think you received it in error, please notify the sender. Do not forward or copy without permission of the sender. This message may contain an advertisement of a product or service and thus may constitute a commercial electronic mail message under US Law. The postal address for PNC is 249 Fifth Avenue, Pittsburgh, PA 15222. If you do not wish to receive any additional advertising or promotional messages from PNC at this e-mail address, click here to unsubscribe.
https://pnc.p.delivery.net/m/u/pnc/uni/p.asp By unsubscribing to this message, you will be unsubscribed from all advertising or promotional messages from PNC. Removing your e-mail address from this mailing list will not affect your subscription to alerts, e-newsletters or account servicing e-mails.
The contents of this email are the property of PNC. If it was not addressed to you, you have no legal right to read it. If you think you received it in error, please notify the sender. Do not forward or copy without permission of the sender. This message may contain an advertisement of a product or service

and thus may constitute a commercial electronic mail message under US Law. The postal address for PNC is 249 Fifth Avenue, Pittsburgh, PA 15222. If you do not wish to receive any additional advertising or promotional messages from PNC at this e-mail address, click here to unsubscribe.
https://pnc.p.delivery.net/m/u/pnc/uni/p.asp By unsubscribing to this message, you will be unsubscribed from all advertising or promotional messages from PNC. Removing your e-mail address from this mailing list will not affect your subscription to alerts, e-newsletters or account servicing e-mails.

The contents of this email are the property of PNC. If it was not addressed to you, you have no legal right to read it. If you think you received it in error, please notify the sender. Do not forward or copy without permission of the sender. This message may contain an advertisement of a product or service and thus may constitute a commercial electronic mail message under US Law. The postal address for PNC is 249 Fifth Avenue, Pittsburgh, PA 15222. If you do not wish to receive any additional advertising or promotional messages from PNC at this e-mail address, click here to unsubscribe.
https://pnc.p.delivery.net/m/u/pnc/uni/p.asp By unsubscribing to this message, you will be unsubscribed from all advertising or promotional messages from PNC. Removing your e-mail address from this mailing list will not affect your subscription to alerts, e-newsletters or account servicing e-mails.

The contents of this email are the property of PNC. If it was not addressed to you, you have no legal right to read it. If you think you received it in error, please notify the sender. Do not forward or copy without permission of the sender. This message may contain an advertisement of a product or service and thus may constitute a commercial electronic mail message under US Law. The postal address for PNC is 249 Fifth Avenue, Pittsburgh, PA 15222. If you do not wish to receive any additional advertising or promotional messages from PNC at this e-mail address, click here to unsubscribe.
https://pnc.p.delivery.net/m/u/pnc/uni/p.asp By unsubscribing to this message, you will be unsubscribed from all advertising or promotional messages from PNC. Removing your e-mail address from this mailing list will not affect your subscription to alerts, e-newsletters or account servicing e-mails.

The contents of this email are the property of PNC. If it was not addressed to you, you have no legal right to read it. If you think you received it in error, please notify the sender. Do not forward or copy without permission of the sender. This message may contain an advertisement of a product or service and thus may constitute a commercial electronic mail message under US Law. The postal address for PNC is 249 Fifth Avenue, Pittsburgh, PA 15222. If you do not wish to receive any additional advertising or promotional messages from PNC at this e-mail address, click here to unsubscribe.
https://pnc.p.delivery.net/m/u/pnc/uni/p.asp By unsubscribing to this message, you will be unsubscribed from all advertising or promotional messages from PNC. Removing your e-mail address from this mailing list will not affect your subscription to alerts, e-newsletters or account servicing e-mails.

The contents of this email are the property of PNC. If it was not addressed to you, you have no legal right to read it. If you think you received it in error, please notify the sender. Do not forward or copy without permission of the sender. This message may contain an advertisement of a product or service and thus may constitute a commercial electronic mail message under US Law. The postal address for PNC is 249 Fifth Avenue, Pittsburgh, PA 15222. If you do not wish to receive any additional advertising or promotional messages from PNC at this e-mail address, click here to unsubscribe.
https://pnc.p.delivery.net/m/u/pnc/uni/p.asp By unsubscribing to this message, you will be unsubscribed from all advertising or promotional messages from PNC. Removing your e-mail address from this mailing list will not affect your subscription to alerts, e-newsletters or account servicing e-mails.



P.O. Box 1820
Dayton, OH 45401-1820

**Mailing Address:**
P.O. Box 1820
Dayton, Ohio 45401-1820

MAY 19, 2009

86517 001508

JEFFREY M FOSTER
6201 N KILPATRICK AVE
CHICAGO IL 60646

RE:  NATIONAL CITY MORTGAGE (NCM) LOAN NUMBER 0005771586
     FORBEARANCE AGREEMENT

Dear Customer:

Payments are to be received by National City Mortgage on or before
the following dates.

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|------|-----|------|------|-----|
| 01 | 06/01/09 | 4,981.03 | 02 | 07/01/09 | 4,981.03 |
| 03 | 08/01/09 | 4,981.03 | | | |

Contact the National City Mortgage Customer Counseling Department
at 1-800-523-8654 on or before 8/1/2009 in order to make
subsequent arrangements to bring the loan current.

Please sign the original of this Agreement to indicate your acceptance
of the terms and return it to us immediately. Retain a copy for your
records. All payments under the terms of this agreement must be mailed
to National City Mortgage, Attn: Payment Services, 3232 Newmark Drive,
Miamisburg, Ohio 45342.

Negative credit bureau reporting and late charges will be assessed until
the loan is brought current.

Sincerely,

JESSY HUFF
Customer Counseling Department             XC931 045 IJU

SIGNED_____   DATE_____

SIGNED_____   DATE_____

This is an attempt to collect a debt. Any information obtained will
be used for that purpose. However, if you have received a discharge in
bankruptcy affecting our right to collect your loan as a personal
obligation, and if the loan was not reaffirmed in the bankruptcy case,
NCM will only exercise its rights against the property itself, and is
not attempting to collect the discharged debt from you personally.

Exhibit H

Mr. Jessy Huff                                          May 19,2009
High Risk Negotiation
Private Team
National City


Re: Loan modification of 56 Fiesta way, Ft Lauderdale, FL


I would like to confirm that my loan modification on my home would commence in three
months as long as get rid of my car payment of $1945.

The modification would be a 30 year fixed loan at 3%.


Sincerely,

Jeff Foster
(773)983-3595 cell


Exhibit I

**National City.**
Mortgage

**National City Mortgage**
A Division of National City Bank
3232 Newmark Drive
Miamisburg, OH 45342
(800) 822-5626
www.ncmc.com

**Mailing Address:**
P.O. Box 1820
Dayton, Ohio 45401-1820

May 26, 2009

Jeffrey M Foster
56 Fiesta Way
Fort Lauderdale FL  33301

      RE:  Loan No. 0005771586
      Property Address:  56 Fiesta Way, Fort Lauderdale, Florida 33301

Dear Mr. Foster:

National City Mortgage is in receipt of your letter dated May 19, 2009, which was forwarded to me on May 20, 2009, for review and response.  In your letter, you requested for National City Mortgage to send you written communication confirming that a Loan Modification will be completed on your mortgage loan once the three months' Forbearance Agreement is completed.

Your mortgage loan has been reviewed; my findings are detailed below.

Our records reflect that on May 19, 2009, your mortgage loan was set up on a three months' Forbearance Agreement.  Once the Forbearance Plan is completed, your mortgage loan will be reevaluated for a possible Loan Modification.  If you have any questions concerning the Forbearance Agreement, please call your assigned Loss Mitigation Negotiator, Jessy Huff, at 1-800-367-9305, extension 55257.

Currently, your mortgage loan is due for May 2009 and has been set up on a Forbearance Agreement.  If you have any questions concerning your mortgage loan, please call our Customer Counseling Department at 1-800-523-8654.

Sincerely,

*Sandy Nickell*

Sandy Nickell
Default Executive Office
Mortgage Services - Default Information Services

# National City

## Mortgage

National City Mortgage
A Division of National City Bank
3232 Newmark Drive
Miamisburg, Ohio 45342
Telephone: (937) 910-1200

P.O. Box 1820
Dayton, OH 45401-1820

**Mailing Address:**
P.O. Box 1820
Dayton, Ohio 45401-1820

SEPTEMBER 28, 2009

96785 002018

JEFFREY M FOSTER
6201 N KILPATRICK AVE
CHICAGO IL 60646

RE: NATIONAL CITY MORTGAGE (NCM) LOAN NUMBER 0005771586

Dear Customer:

As of the date of this letter, we have completed a review of your
hardship assistance request (homeowner assistance package).
Unfortunately, we are unable to approve or finalize your request for
assistance, due to the following reason(s):

Per investor unable to mod this file based on income and
expense, for questions please contact
Jennifer Wilson @ 937-910-3592.

If you have determined that your property is no longer affordable
National City has partnered with Loan Resolution Corporation (LRC).
LRC specializes in assisting homeowners to sell their property, even
if they owe more on their property than what it is worth (commonly
called a "Short Sale"). By selling the property you may:

- Avoid the severe impact of having a foreclosed mortgage on
  your credit score
- Be eligible to settle the outstanding balance on your mortgage
- Ease some of the financial burden you are currently experiencing

LRC understands that your house is important to you and that being
behind on mortgage payments, or coping with the prospect of being
behind, can be a difficult situation to resolve. If selling your
property is an option you'd like to explore further, then LRC may be
able to help.

LRC may be contacting you in the next few weeks to discuss this option
or you may contact them directly at 1-800-499-5925.

Please note that normal servicing of your loan will continue, including
collection and foreclosure proceedings, as well as negative credit bureau
reporting, if applicable. If these proceedings were previously suspended
on your loan, they have resumed.

Exhibit K

749-3008-0908F

PNC
MORTGAGE℠

3232 Newmark Drive
Miamisburg, Ohio 45342
Telephone: (937) 910-1200

P.O. Box 1820
Dayton, OH 45401-1820

**Mailing Address:**
P.O. Box 1820
Dayton, Ohio 45401-1820

NOVEMBER 24, 2009

46347 002203

JEFFREY M FOSTER
6201 N KILPATRICK AVE
CHICAGO IL 60646

RE:  LOAN NUMBER 0005771586

Dear Customer:

As of the date of this letter, we have completed a review of your
hardship assistance request (homeowner assistance package).
Unfortunately, we are unable to approve or finalize your request for
assistance, due to the following reason(s):

Failure to return the executed documents.

If you have determined that your property is no longer affordable
PNC Mortgage, a division of PNC Bank, National Association (PNC Mortgage)
has partnered with Loan Resolution Corporation (LRC).  LRC specializes
in assisting homeowners to sell their property, even if they owe more
on their property than what it is worth (commonly called a "Short Sale").
By selling the property you may:

-   Avoid the severe impact of having a foreclosed mortgage on
    your credit score
-   Be eligible to settle the outstanding balance on your mortgage
-   Ease some of the financial burden you are currently experiencing

LRC understands that your house is important to you and that being
behind on mortgage payments, or coping with the prospect of being
behind, can be a difficult situation to resolve.  If selling your
property is an option you'd like to explore further, then LRC may be
able to help.

LRC may be contacting you in the next few weeks to discuss this option
or you may contact them directly at 1-800-499-5925.

Please note that normal servicing of your loan will continue, including
collection and foreclosure proceedings, as well as negative credit bureau
reporting, if applicable.  If these proceedings were previously suspended
on your loan, they have resumed.

Exhibit L



National City Mortgage Co.
a subsidiary of National City Bank
3232 Newmark Drive
Miamisburg, Ohio 45342

National City Loan Number:   5771586
Investor Loan Number:   5771586

*Borrower's Copy*

Dear Borrower:

The modification of your loan has been approved.  To successfully complete this transaction, you must follow these instructions very carefully.  Be advised, until such time National City Mortgage Co., a subsidiary of National City Bank has fully executed documents and all required money, we will proceed with any and all of our rights and remedies as provided by the loan papers.

On all pages where a signature is required, please sign your name exactly how it is typed below. The county will not record the modification unless it is signed this way.

1)   Using <u>black ink only</u>,  JEFFREY M FOSTER

      must sign all three (3) copies of the Loan Modification **in the presence of an official notary**, who will witness each signature.

2)   Exhibit #1 gives you the terms of the Loan Modification.

3)   **Sign and notarize all three (3) copies of the Loan Modification Agreement.** Return **two (2) originals in the large envelope.  These documents must be returned to our office by** <u>October 31, 2009</u>   . **IF NOT, THIS LOAN MODIFICATION MAY BE NULL AND VOID.**

4)   Retain one (1) copy of all documents for your personal records.
     Your first modified monthly payments is due in the amount of       $7,409.24
     In addition, a processing fee of       $0.00
     modification closing costs of       $6,320.10
     and a cash contribution in the amount of       $0.00
        Less funds received by NCM and placed into suspense       $0.00
5)   Please enclose <u>certified funds (</u>**CASHIER CHECK OR**
    **MONEY ORDERS**) in the amount of       <u>**$13,729.34**</u>
    along with the two signed documents

If you have any questions regarding the modification, please call me at 1-800-367-9305 ext. #  55257

Sincerely,

JESSY HUFF
National City Mortgage Co.,
a subsidiary of National City Bank
Loss Mitigation Department

Exhibit M

0005771586

6. Pursuant to Section 199.145(4)(b), Florida Statutes, additional nonrecurring intangible tax is due. This Mortgage is given in connection with the refinancing of an obligation secured by an existing mortgage, recorded in Official Records Book 36839, Page 407 Instrument No. 103694340     , Public Records of BROWARD COUNTY County, Florida from the Mortgagor hereunder to the Mortgagee hereunder, or to the assignor of the Mortgagee hereunder. As of the date of refinancing, the unpaid principal balance of the original obligation, plus accrued but unpaid interest, secured by the existing mortgage is equal to $   1,046,238.09   . The principal balance of the new obligation secured by this Mortgage is $   1,125,346.34   , which amount represents, as of the refinancing, the excess of the unpaid principal balance of the original obligation, plus accrued but unpaid interest. Notwithstanding anything to the contrary contained in the foregoing, if the obligor under the new obligation is not liable to the obligee under the obligation secured by this Mortgage, then the additional nonrecurring intangible tax shall be computed on the entire principal balance of the new obligation.

**NATIONAL CITY MORTGAGE CO., A SUBSIDIARY OF NATIONAL CITY BANK**

| | |
|---|---|
| Name: **APRIL SCHEIDIG** | -Lender |
| Its: **Authorized Agent.** | |
| | **Mailing Address** |

| | |
|---|---|
| -Witness | -Witness |
| -Witness - Printed Name | -Witness - Printed Name |

**JEFFREY M FOSTER**         -Borrower

            **Mailing Address**

-Borrower

-Borrower

-Borrower

| | |
|---|---|
| -Witness | -Witness |
| -Witness - Printed Name | -Witness - Printed Name |

LOAN MODIFICATION AGREEMENT- Single Family - Fannie Mae Uniform Instrument     Form 3162   6/06 (rev. 01/09)
First American Loan Production Services                                       *(page 4 of 5)*
First American Real Estate Solutions LLC                                     **FLORIDA**
FALPS# FLFM3162-4 Rev. 07-13-09

0005771586

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b)    all terms and provisions of any adjustable rate rider or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

    (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

LOAN MODIFICATION AGREEMENT- Single Family - **Fannie Mae Uniform Instrument**    **Form 3162  6/06 (rev. 01/09)**
Modified by First American Loan Production Services    *(page 3 of 5)*
First American Real Estate Solutions LLC    **FLORIDA**
FALPS# FLFM3162-3  Rev. 02-05-09

0005771586

the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **NOVEMBER 1, 2009**     , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $     **1,125,346.34**     consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance for the first five years at the yearly rate of **3.000000** % from **NOVEMBER 1, 2009**     , and Borrower promises to pay monthly payments of principal and interest in the amount of $     **4,744.51**     beginning on the **1ST** day of **DECEMBER, 2009**     . During the sixth year, interest will be charged at the yearly rate of **4.000000** % from **NOVEMBER 1, 2014**     , and Borrower shall pay monthly payments of principal and interest in the amount of $     **6,223.17**     beginning on the **1ST** day of **DECEMBER, 2014**     . During the seventh year, interest will be charged at the yearly rate of **5.000000** % from **NOVEMBER 1, 2015**     , and Borrower shall pay monthly payments of principal and interest in the amount of $     **7,324.11**     beginning on the **1ST** day of **DECEMBER, 2015**     . During the eighth year and continuing thereafter until the Maturity Date (as hereinafter defined), interest will be charged at the yearly rate of **5.375000** %, from **NOVEMBER 1, 2016**   , and Borrower shall pay monthly payments of principal and interest in the amount of $     **8,151.62**     beginning on the **1ST**     day of **DECEMBER, 2016**     and shall continue the monthly payments thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **NOVEMBER 01, 2039**   , (the "Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

**LOAN MODIFICATION AGREEMENT**- Single Family - *Fannie Mae Uniform Instrument*        **Form 3162  6/06 (rev. 01/09)**
Modified by First American Loan Production Services                                                                *(page 2 of 5)*
First American Real Estate Solutions LLC                                                                             **FLORIDA**
FALPS# FLFM53162-2.4  Rev. 04-04-09

## LEGAL DESCRIPTION
### Exhibit "A"
### NCM# 0005771586
### TAX ID# 10201-11-05900

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the   COUNTY

[Type of Recording Jurisdiction]

of   BROWARD                                :

[Name of Recording Jurisdiction]

LOT 59, OF ISLAND NO. 3 OF NURMI ISLES, A SUBDIVISION, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 24, AT PAGE 42, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA. TAX ID # 0201110590

which currently has the address of  56 FIESTA WAY

[Street]

FORT LAUDERDALE                          , Florida  33301                    ("Property Address"):

[City]                                          [Zip Code]

This Document Prepared By:
Individual's Name/Title:
JESSY R. HUFF _____

NATIONAL CITY MORTGAGE
3232 NEWMARK DRIVE
MIAMISBURG, OHIO 45342
When Recorded Mail To:
FIRST AMERICAN TITLE
P.O. BOX 27670
SANTA ANA, CA 92799-7670
Parcel No.
_____ [Space Above This Line for Recording Data]

| Original Recorded Date: JANUARY 30, 2004 | Fannie Mae Loan No. 0005771586 |
| Original Principal Amount: $ 1,100,000.00 | Loan No. 0005771586 |

# LOAN MODIFICATION AGREEMENT
### (Providing for Step Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **15TH** day of **OCTOBER, 2009** ,
between   **JEFFREY M FOSTER. , A SINGLE MAN**

("Borrower") and  **NATIONAL CITY MORTGAGE CO., A SUBSIDIARY OF NATIONAL CITY BANK**
("Lender"),

amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), and
Timely Payment Rewards Rider, if any, dated **JANUARY 30, 2004**                               and recorded in
**Book or Liber 36839, at page(s) 407, Instrument No. 103694340**          , of the **Official**    Records of
(Name of Records)
**BROWARD COUNTY COUNTY, FLORIDA**             , and (2) the Note bearing the same date as, and
(County and State, or other jurisdiction)
secured by, the Security Instrument, which covers the real and personal property described in the Security
Instrument and defined therein as the "Property", located at

**56 FIESTA WAY, FORT LAUDERDALE, FLORIDA 33301**
(Property Address)

**National City Mortgage Co.,**
A Subsidiary of National City Bank

For your records:

| Due Date |
|---|
| January 1, 2010 |

| **IMPORTANT** |
|---|
| Payments not received |
| by the due date are |
| considered late. |

DATE

CHECK NO.

AMOUNT

JEFFREY M FOSTER

* Additional funds shall be applied toward outstanding
fee,s and current month's payment must be satisfied
prior to additional principal payments being applied.

**National City Mortgage Co.,**
a subsidiary of National City Bank
Attention: JESSY HUFF
      Loss Mitigation
3232 Newmark Drive
Miamisburg, Ohio 45342

| LOAN NUMBER | DUE DATE | AMOUNT DUE |
|---|---|---|
| 5771586 | January 1, 2010 | $7,409.24 |

| IF NOT REC'D BY | LATE PAYMENT |
|---|---|
| January 16, 2010 | $7,658.29 |

| REGULAR PAYMENT | |
|---|---|
| ADDITIONAL PRINCIPAL* | |
| LATE FEES | |
| TOTAL PAYMENT | |

**Websit: www.nationalcitymortgage.com**

| Due Date |
|---|
| February 1, 2010 |

| **IMPORTANT** |
|---|
| Payments not received |
| by the due date are |
| considered late. |

DATE

CHECK NO.

AMOUNT

JEFFREY M FOSTER

* Additional funds shall be applied toward outstanding
fee,s and current month's payment must be satisfied
prior to additional principal payments being applied.

**National City Mortgage Co.,**
a subsidiary of National City Bank
Attention: JESSY HUFF
      Loss Mitigation
3232 Newmark Drive
Miamisburg, Ohio 45342

| LOAN NUMBER | DUE DATE | AMOUNT DUE |
|---|---|---|
| 5771586 | February 1, 2010 | $7,409.24 |

| IF NOT REC'D BY | LATE PAYMENT |
|---|---|
| February 16, 2010 | $7,658.29 |

| REGULAR PAYMENT | |
|---|---|
| ADDITIONAL PRINCIPAL* | |
| LATE FEES | |
| TOTAL PAYMENT | |

**Customer Service: 1-800-822-5626**

| Due Date |
|---|
| March 1, 2010 |

| **IMPORTANT** |
|---|
| Payments not received |
| by the due date are |
| considered late. |

DATE

CHECK NO.

AMOUNT

JEFFREY M FOSTER

* Additional funds shall be applied toward outstanding
fee,s and current month's payment must be satisfied
prior to additional principal payments being applied.

**National City Mortgage Co.,**
a subsidiary of National City Bank
Attention: JESSY HUFF
      Loss Mitigation
3232 Newmark Drive
Miamisburg, Ohio 45342

| LOAN NUMBER | DUE DATE | AMOUNT DUE |
|---|---|---|
| 5771586 | March 1, 2010 | $7,409.24 |

| IF NOT REC'D BY | LATE PAYMENT |
|---|---|
| March 16, 2010 | $7,658.29 |

| REGULAR PAYMENT | |
|---|---|
| ADDITIONAL PRINCIPAL* | |
| LATE FEES | |
| TOTAL PAYMENT | |

## Exhibit #1

| | |
|---|---|
| Investor Loan # | 5771586 |
| National City Mortgage Co. Loan # | 5771586 |
| Due Date of Last Paid Installment  (DDLPI) | 08/01/2009 |
| | |
| Interest rate of existing Mortgage | 4.5000% |
| New modified interest rate | 3.0000% |
| New modified loan term (months) | 360 |
| Servicer fee (bps) | 0.25000% |
| | |
| Effective date of Modification | 11/01/2009 |
| Due date of first modified payment | 12/01/2009 |
| | |
| Maturity date of existing Mortgage | 02/01/1944 |
| New maturity date of modified mortgage | 11/01/2039 |
| Existing unpaid principal balance | $1,046,238.09 |
| | |
| Additions to principal balance: | |
| Accrued interest to effective date (Estimate) | $11,758.27 |
| Escrow advance/due | $35,843.34 |
| Amount to fully refund escrow (Estimate) | $31,506.64 |
| Legal fees and costs (Estimate) | $0.00 |
| Other fees and costs | $0.00 |
| Modification Processing fee if capitalized: | $0.00 |
| | |
| Subtractions from principal balance: | |
| Less borrower's cash contribution | $0.00 |
| Less mortgage insurance contribution | $0.00 |
| Less Suspense Funds | $0.00 |
| | |
| Total capitalization amount | $79,108.25 |
| | |
| New Modified unpaid principal balance amortized (Estimate) | $1,125,346.34 |
| | |
| New modified payment of principal and interest (Estimate) | $4,744.51 |
| New modified monthly escrow payment for taxes and insurance (Estimate) | $2,664.73 |
| TOTAL new modified monthly payment (Estimate) | $7,409.24 |
| | |
| Amounts due from borrower for modification (by certified or cashier's check) | |
| Borrower cash contribution to reduce principal balance * | $0.00 |
| Closing costs for modification (title, documents, closing) (Estimate) ** | $6,320.10 |
| Processing fee for review of modification request | $0.00 |
| Borrower's first modified monthly payment (Estimate) | $7,409.24 |
| Less funds received by NCM and placed into suspense | $0.00 |
| TOTAL CASH DUE FROM BORROWER | $13,729.34 |

YOUR SECOND MODIFIED  PAYMENT WILL BE DUE ON FIRST OF    January 1, 2010
If you have not received new payment coupons send your payments to my attention.


* Borrower's cash contribution will be applied to reduce the total amount due on the mortgage, and this amount must be paid in full regardless of whether actual amounts are higher or lower than estimated amounts.  ** The amount shown for closing costs is the minimum amount due.  If the final closing costs are less than the estimate, then the excess amount will be applied to reduce the total amount due on the mortgage.  If the final closing costs are more than the estimate, the borrower is responsible for these amounts and they must be collected when the modification documents are signed and final cash amounts are due.

Date: NOVEMBER 1, 2009
Loan Number:  0005771586
Lender:  NATIONAL CITY MORTGAGE CO., A SUBSIDIARY OF NATIONAL CITY BANK

Borrower:  JEFFREY M FOSTER

Property Address:  56 FIESTA WAY, FORT LAUDERDALE, FLORIDA 33301

## Florida
## Affidavit of Continuous Marriage

STATE OF FLORIDA

COUNTY OF _____

BEFORE ME, the undersigned Notary Public, personally known to me or who had produced _____ as identification appeared **JEFFREY M FOSTER** , (hereinafter "Affiant"), who being by me first duly sworn, deposes and says:

1.   Affiant is over the age of eighteen (18) years.

2.   This Affidavit pertains to the following real property:
     **56 FIESTA WAY**
     **FORT LAUDERDALE, FLORIDA 33301**

3.   Affiant is executing this Affidavit for the purpose of establishing in the public records that he/she is married to _____ , and such marriage has been continuous and uninterrupted from a date prior to his/her acquisition of the above-described property through the date of this Affidavit.

4.   Affiant is aware that grantee/lender and _____ Title Insurance Company are relying upon this Affidavit to issue title insurance policies without exception to the matter(s) noted above.

5.   Affiant is familiar with the nature of an oath and with the penalties provided by the laws of the State of Florida for falsely swearing to statements made in an Affidavit of this nature.

Affiant has caused this Affidavit to be executed this _____ day of _____ , 20_____ .

_____
**JEFFREY M FOSTER**

SWORN TO AND SUBSCRIBED before me this _____ day of _____ , 20_____ .


                                        _____
                                                                  Notary Public

                              My Commission Expires: _____

First American Loan Production Services
© 2008 First American Real Estate Solution LLC
FALPS# FALPSFL2000 Rev. 05-23-08

Date: NOVEMBER 1, 2009
Loan Number: 0005771586
Lender: NATIONAL CITY MORTGAGE CO., A SUBSIDIARY OF NATIONAL CITY BANK

Borrower: JEFFREY M FOSTER


Property Address: 56 FIESTA WAY
FORT LAUDERDALE, FLORIDA 33301

# ERRORS AND OMISSIONS
# COMPLIANCE AGREEMENT

In consideration of NATIONAL CITY MORTGAGE CO., A SUBSIDIARY OF NATIONAL CITY BANK

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.


**JEFFREY M FOSTER**
_____                                    Date

_____                                    Date

_____                                    Date

_____                                    Date

_____                                    Date

_____                                    Date

Date: NOVEMBER 1, 2009
Loan Number: 0005771586
Lender: NATIONAL CITY MORTGAGE CO., A SUBSIDIARY OF NATIONAL CITY BANK

Borrower: JEFFREY M FOSTER

Property Address: 56 FIESTA WAY
FORT LAUDERDALE, FLORIDA 33301

# NOTICE OF NO ORAL AGREEMENTS

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____     _____
Borrower                                                      Date
JEFFREY M FOSTER

_____     _____
Borrower                                                      Date

_____     _____
Borrower                                                      Date

_____     _____
Borrower                                                      Date

_____     _____
Borrower                                                      Date

_____     _____
Borrower                                                      Date

0005771586

_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

STATE OF **FLORIDA**

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ by
**JEFFREY M FOSTER. , A SINGLE MAN**

_____
_____
_____
_____ ,

who is personally known to me or who has produced _____ as identification.

_____
(Signature of person taking acknowledgment)

_____
(Name typed, printed or stamped)

_____
(Title or rank)

_____
(serial number, if any)

**LENDER ACKNOWLEDGMENT**

STATE OF **OHIO** _____

COUNTY OF **MONTGOMERY** _____

The foregoing instrument was acknowledged before me this _____ by
**APRIL SCHEIDIG, Authorized Agent.** _____ ,
of _____ ,
a _____ corporation, on behalf of the corporation.
He/She is personally known to me or who has produced _____ as identification.

_____
(Signature of person taking acknowledgment)

_____
(Name typed, printed or stamped)

_____
(Title or rank)

_____
(serial number, if any)

**LOAN MODIFICATION AGREEMENT**- Single Family - **Fannie Mae Uniform Instrument**        **Form 3162**  6/06 (rev. 01/09)
Modified by First American Loan Production Services                                              *(page 5 of 5)*
First American Real Estate Solutions LLC                                                         **FLORIDA**
FALPS# FLFM3162-5  Rev  02-05-09

**PNC MORTGAGE**℠

3232 Newmark Drive
Miamisburg, Ohio 45342
Telephone: (937) 910-1200

Attention: Payment Services
P.O. Box 1820
Dayton, OH 45401-1820

**Mailing Address:**
P.O. Box 1820
Dayton, Ohio 45401-1820

April 02, 2010

49462 001040 PS152
Jeffrey M Foster
6201 N Kilpatrick Ave
Chicago IL 60646

RE: Loan No. 0005771586

Dear Customer:

According to our records, there is a balance of $ 4,437.33 that
we are unable to apply to your loan because your required monthly
payment is $ 13,199.95.

We can only accept partial payments when prior arrangements have
been made with our Collections Center.

Please remit the difference of $ 8,762.62 using the payment coupon
below. If we do not hear from you by April 23, 2010, we may
apply these funds towards any outstanding fees due or escrow
balance, if applicable.

Thank you for your immediate attention. PNC Mortgage, a division
of PNC Bank, National Association values its customers and we strive
to service our customers' accounts in the best possible manner.
If you have any questions, please call one of our Customer Service
Representatives at 1-800-822-5626.

Sincerely,

Payment Services Department
Visit our Web Site at: www.pnc.com/mortgage          PS152 HAH
-----------------------CUT ALONG DOTTED LINE-----------------------

PAYMENT COUPON

Loan No. 0005771586                Amount Due:            8,762.62

PLEASE MAIL PAYMENT TO:
   PNC Mortgage/Payment Services
   Mail: B6-YM14-01-1
   P O Box 1820
   Dayton, OH 45401-1820
                          Jeffrey M Foster              PS152 HAH

Exhibit N

# PNC
## MORTGAGE℠

a Division of **PNC** Bank National Association
3232 Newmark Drive - Miamisburg, Ohio 45342

**Mailing Address:**
P.O. Box 1024
Dayton, Ohio 45401-1024

P.O. Box 1024
Dayton, Ohio 45401-1024

July 26, 2011

JEFFREY M FOSTER
6201 N KILPATRICK AVE
CHICAGO, IL 60646

| | |
|---|---|
| Property Address: | POLICY NUMBER: FLR2112663475 |
| 56 FIESTA WAY | COVERAGE AMOUNT: $69,500 |
| FORT LAUDERDALE, FL 33301 | EFFECTIVE DATE: 05/08/2011 |
| | CANCEL DATE: 05/08/2011 |

Loan No.
0005771586

Dear Borrower:

Thank you for providing evidence of your flood insurance. We have updated our records to reflect this current information. Any temporary coverage has been canceled without charge to your account. Please accept our apologies for any inconvenience caused by this process.

If you have any questions, please contact our Customer Service Department at 1-800-822-5626.

Sincerely,

Insurance Department

Exhibit O

PNC Mortgage
2335 Byers Ridge Drive
Miamisburg, Ohio 45342
Telephone: (937) 910-1200

Attention: Payment Services
P.O. Box 1820
Dayton, OH 45401-1820

Mailing Address:
P.O. Box 1820
Dayton, Ohio 45401-1820

September 01, 2011

66402 000352 PS152
Jeffrey M Foster
6201 N Kilpatrick Ave
Chicago IL 60646

RE: Loan No. 0005771586

Dear Customer:

According to our records, there is a balance of $ 6,156.83 that
we are unable to apply to your loan because your required monthly
payment is $ 6,237.67.

Please pay the difference of $ 80.84 using the payment coupon
below. The balance above will be held in a suspense account until
September 22, 2011. If we do not hear from you by that date, the funds
will be applied to your mortgage account in the following order
(as applicable): negative escrow balances, late charges, returned check
fees, property inspection fees and any other fees due. Any remaining
funds will be returned to you.

Please keep in mind that we can only accept partial payments when prior
arrangements have been made with our Collections Center.

If you have any questions, please contact our Customer Service Team
at 1-800-822-5626. You may also visit us online at pnc.com/mortgage
                                                 pnc.com/mortgage
to view up-to-date loan information 24 hours a day, 7 days a week.

Sincerely,

PNC Mortgage
Payment Services Department                        PS152 HAH

This is an attempt to collect a debt. Any information obtained will be
used for that purpose. However, if you have received a discharge in
bankruptcy affecting our right to collect your loan as a personal
obligation, and if the loan was not reaffirmed in the bankruptcy case,
PNC Mortgage, a division of PNC Bank, National Association will only
exercise its rights against the property itself, and is not attempting
to collect the discharged debt from you personally.

Exhibit P



3232 Newmark Drive
Miamisburg, Ohio 45342
Telephone: (937) 910-1200

P.O. Box 1820
Dayton, OH 45401-1820

**Mailing Address:**
P.O. Box 1820
Dayton, Ohio 45401-1820

SEPTEMBER 16, 2011

66980 005264

JEFFREY M FOSTER
6201 N KILPATRICK AVE
CHICAGO IL 60646

RE: LOAN NUMBER 0005771586

DEAR CUSTOMER:

Your loan is now delinquent for two (2) payments. The total amount due is $ 13,668.13. If you are unable to pay the total amount due, please review the following options. All of these options are subject to investor review and approval.

1. Repayment Plan
   An agreement where you would resume making your regular monthly payments, in addition to a portion of the past-due payments.
2. Modification
   If you can afford to make monthly payments, but cannot bring your loan current, we may be able to modify the terms of your original loan which may reduce your monthly payment.
3. Assumption
   A qualified buyer may be allowed to assume your Mortgage, based on assumption guidelines.
4. Short Sale
   If the payoff amount is greater than the fair market value of your property, you may qualify to sell your home for less than you owe.
5. Deed-in-Lieu
   If you have the property listed for a period of time with no activity, we may accept title to your property as settlement for the debt.

PNC Mortgage, a division of PNC Bank, National Association (PNC Mortgage) must determine your eligibility for any of these options. Please call our office at 1-800-523-8654 or visit our website at www.pnc.com/mortgage. We can encourage you to contact a HUD-approved counseling agency for financial counseling. To locate an agency near you, please call 1-800-569-4287, or visit www.hud.gov.

Sincerely,
Collections Center                    XC072 082 CPI
Enclosure (I)

This is an attempt to collect a debt. Any information obtained will be used for that purpose. However, if you have received a discharge in bankruptcy affecting our right to collect your loan as a personal obligation, and if the loan was not reaffirmed in the bankruptcy case, PNC Mortgage will only exercise its rights against the property itself, and is not attempting to collect the discharged debt from you personally.

Exhibit Q

**PNC**
MORTGAGE

September 22, 2011


Jeffrey M Foster
6201 N Kilpatrick Ave
Chicago IL 60646


RE:  Loan No. 0005771586

Dear Customer:

Enclosed is a check for $4,964.04.  As you were previously notified,
we are unable to accept payments less than the required monthly
payment of $ 6,237.67.

Please send your total monthly payment, along with your payment
coupon to:

> PNC Mortgage
> P. O. Box 533510
> Atlanta GA  30353-3510

If you have any questions, please contact our Customer Service
Team at 1-800-822-5626. You may also visit us online at **pnc.com/mortgage**
to view up-to-date loan information 24 hours a day, 7 days a week.

Sincerely,

PNC Mortgage
Payment Services Department

Enclosure

PS156 HAH

This is an attempt to collect a debt. Any information obtained will be
used for that purpose. However, if you have received a discharge in
bankruptcy affecting our right to collect your loan as a personal
obligation, and if the loan was not reaffirmed in the bankruptcy case,
PNC Mortgage, a division of PNC Bank, National Association will only
exercise its rights against the property itself, and is not attempting
to collect the discharged debt from you personally.


Exhibit K

PNC
MORTGAGE℠

December 2, 2011

Jeffrey M Foster
6201 N Kilpatrick Ave
Chicago IL 60646

RE: Loan No. 0005771586

Dear Mr. Foster:

PNC Mortgage, a division of PNC Bank, National Association (PNC Mortgage) is in receipt of your correspondence concerning the payments due on the account.

In May 2010, PNC Mortgage approved your loan for a loan modification and the terms of the loan modification were as follows:

> Amount due with loan modification documents: $13,532.04
> New Principal, Interest, Taxes, and Insurance: $6,730.55
> Amount Capitalized: $98,254.63
> Modified Loan Amount: $1,126,790.94
> Modified Term: 480
> Date to Resume Payments: July 1, 2010

The loan modification brought your loan current through June 1, 2010. Based on our records, the first payment received subsequent to the completion of the loan modification was on July 30, 2010, which was applied to the July 1, 2010 payment.

Please be advised that PNC Mortgage was in receipt of each of your payments. However, the payment received for August 2011 was less than the contractual payment and we are unable to apply funds to your loan that are less than the contractual payment. The enclosed letter dated September 1, 2011 was sent to inform you that we needed an additional $80.84 to apply the payment. However, the funds were not received and the enclosed letter dated September 22, 2011 was sent to inform you that the funds of $4,964.04 were returned to you. The remaining funds of $1,192.79 were applied to your late charge balance. For your convenience, I have enclosed a copy of your payment history for your review.

In reviewing the documentation you provided me, I have been unable to determine the discrepancy about which you are inquiring. I acknowledge that you are requesting to email me directly to provide additional information as stated in your correspondence; however, as previously advised via the voicemail message I left you on November 17, 2011, an email would not be a secure channel to submit or receive personal account information. To improve privacy, I requested you send any additional concerns through our secure message center located at www.PNCMortgage.com or fax a letter to our Customer Service Research Department at 937-910-3333.

Thank you for contacting PNC Mortgage. Please contact our Executive Office at 1-800-524-9995 with any additional concerns regarding your loan.

Sincerely,

*MaryBeth Boar*

MaryBeth Boar
Executive Office Coordinator

Enclosures
  * September 1, 2011 letter
  * September 22, 2011 letter

Exhibit S

# PNC
## MORTGAGE℠

a Division of PNC Bank National Association
3232 Newmark Drive - Miamisburg, Ohio 45342

P.O. Box 1024
Dayton, Ohio 45401-1024

**Mailing Address:**
P.O. Box 1024
Dayton, Ohio 45401-1024

November 18, 2011

JEFFREY M FOSTER
6201 N KILPATRICK AVE
CHICAGO, IL 60646-5070

Loan Number:        0005771586
Effective Date:     09/05/2011
Expiration Date:    09/05/2012
Dwelling Amount: $1,000,000

Property Address: 56 FIESTA WAY
FORT LAUDERDALE, FL 33301

### NOTICE OF WIND INSURANCE COVERAGE

Dear Customer:

PNC Mortgage, a division of PNC Bank, National Association (PNC Mortgage) previously sent you a notification that we did not have any evidence of sufficient windstorm or hail insurance coverage on the above referenced property. According to the terms of your mortgage, you are required to maintain insurance coverage for damage to your home from all types of wind and hail, including coverage for hurricanes, tornados, or named tropical storms ("Comprehensive Wind"). Failure to maintain required insurance coverage is a breach of this requirement.

Therefore, we have purchased Comprehensive Wind coverage and disbursed the premium of $37,730.00 from your escrow account. If your loan does not have an escrow account, one will be established for you. Your monthly mortgage payment may increase to include the cost of this coverage.

The coverage that PNC Mortgage secures will only cover the structure and will only protect our interest in the property. This coverage may not insure the property for the full value, and may not protect your interest. In addition, this coverage will not cover your personal property and liability, and may be substantially more expensive than the coverage you can purchase through your agent.

We encourage you to contact your local agent to obtain sufficient coverage and send PNC Mortgage one of the following: your current hazard insurance policy that includes coverage for all types of wind and hail damage ("Comprehensive Wind"), evidence of an acceptable replacement policy, or a separate Comprehensive Wind insurance policy. If you reside in a condominium or townhouse, you will need to request that your homeowners association provide you with a copy of their master policy, showing coverage for all types of wind and hail damage. The policy information may be sent to:

PNC BANK, NA
ISAOA, ATIMA
P O BOX 1024
DAYTON, OH 45401-1024

Once evidence of acceptable wind insurance coverage is received, the coverage we purchased may be cancelled. You would then only be charged for the number of days that the wind coverage was actually needed. Any unearned premium would be refunded to your escrow account.

Exhibit T

PNC
MORTGAGE℠

January 06, 2012

Jeffrey M Foster
6201 N Kilpatrick Ave
Chicago IL 60646

RE:  Loan No. 0005771586

Dear Customer:

Thank you for the information on your account.

Your monthly payment has increased due to the lender placed insurance for the windstorm policy.  This accounted for $37,730.00 in unanticipated disbursements from your escrow account.  As stated in the letter sent to you on December 28, 2011, you were previously advised that we would add this policy to your escrow account if we did not receive proof of coverage. However, you may purchase a new windstorm policy to replace the lender placed policy.

If you have further questions about your loan, please call our knowledgeable Customer Service Team at 1-800-822-5626.  If you are internet active, visit us online at www.pnc.com/mortgage to view up-to-date loan information 24 hours a day, 7 days a week! We appreciate you and your business.

Sincerely,

CARA LAMMLEIN
Customer Research Representative

CR192
WDU

Exhibit U

# RE: Loan No. 0005771586

From: **jeffrey foster** (highlandbreeze@hotmail.com)
Sent: Tue 1/24/12 9:30 AM
To:    executive.office@pncmortgage.com

Thank you for verifying that you one again inaccurately marked my credit.

iT WAS YOUR MISTAKE THAT i DID NOT HAVE ADEQUATE FLOOD INSURANCE. You acknowledge your mistake in a letter!!!

First you said it was lack of Hazard. I provided proof. Then you said it was lack of Flood, I provided evidence. I have this in writing !!!!! Now you are back to saying it was flood insurance?

I hereby demand that you immediately restore my credit and fix my account.

This about the 30th example that your company jumps to a conclusion, ruins someone's credit, then continues to believe an original thought, even though I show evidence to the contrary.

It took you 2 additional months to confirm your reason ? I have evidence of a fax I sent YOUR office asking for the reason. After 2 months, you just gave it and it is inaccurate!

I will be looking for a call and correspondence that corrects your reckless use of the credit reporting agencies. Provide an apology in writing, as well as confirmation this will be fixed.

Jeff Foster

From: Executive.Office@pncmortgage.com
To: highlandbreeze@hotmail.com
Subject: Loan No. 0005771586
Date: Tue, 24 Jan 2012 10:14:03 -0500

Mr. Foster,

Upon further research with our Escrow department, it has been verified that your payment increased in July 2011 because of the additional flood gap coverage that was added to your mortgage which changed your payment from $6,156.83 to $6,237.67. On July 28, 2011, we received the refund for the flood gap insurance. At this time, you had continued to pay your regular monthly payment prior to the escrow change of $6,156.83, this further caused your escrow shortage to increase. I have attached a copy of your escrow activity from 2009-present for your review.

In addition, once we receive the proof of windstorm coverage from 9/5/2011-present, we will remove the force placed coverage and will adjust your payment at that time.

Also, as your mortgage servicer, we are obligated to report factual information to the credit bureaus. We regret that we are unable to honor your request for adjustment to your credit report at this time.

Thank you,

Exhibit V

PNC Mortgage Executive Office



**PNC**
MORTGAGE℠

January 18, 2012

Jeffrey M Foster
6201 N Kilpatrick Ave
Chicago IL 60646

RE:   Loan No. 0005771586
      Property Address:  56 Fiesta Way
                         Fort Lauderdale FL 33301

Dear Customer:

This is to notify you that the referenced property is now vacant.
Please provide written documentation immediately of your intent to
cancel your insurance policy or of any changes to the current policy.

Thank you for your attention to this matter.  If you have further
questions about your loan, please call our knowledgeable Customer
Service Team at 1-800-822-5626.  If you are internet active,
visit us online at www.pnc.com/mortgage to view up-to-date loan
information 24 hours a day, 7 days a week!  We appreciate you and
your business.

Sincerely,

Insurance Administration

HZ702 PBM

Exhibit W

A Division of PNC Bank, National Association
3232 Newmark Drive • Miamisburg, OH 45342  •  Mailing Address: P.O. Box 1820 • Dayton, OH 45401-1820
T: 800-822-5626  •  937-910-1200

## Notice of Cancellation of Insurance



**Fireman's Fund**

| Effective Date | Date Mailed | Type of Policy | Issuing Office |
|---|---|---|---|
| 06/01/2012 | 02/15/2012 | Homeowners | MPIR |

Policy Number and
Name and Address of Insured

NZC 03039095

JEFFREY FOSTER
SANDRA SZEREMETA
6201 KILPATRICK AVE
CHICAGO, IL  60646

Policy Number and
Name and Address of Additional Interest

NZC 03039095

PNC MORTGAGE NA
ISAOA ATIMA
PO BOX 1024
DAYTON    OH  45401

We regret to inform you that Fireman's Fund has made a decision to cancel your insurance at 12:01 a.m. standard time on the effective date shown above.  Any covered loss originating during the policy period and prior to the effective date of this notice will not be affected.  Any return premium due you will be refunded if it does not accompany this notice.

We are taking this action for the following reason(s):

This notice applies to property described at:
56 Fiesta Way Fort Lauderdale, FL 33301

The property is vacant which represents a hazard that does not meet our guidelines.  Please contact your Insurance Representative for assistance.

Name of Agent or Broker

KOENIG & STREY INSURANCE AGCY
NORTHBROOK, IL

12-490-354

**Insuring Company**
Fireman's Fund Insurance Co.
One of the Fireman's Fund Insurance Companies

*Ann Brennan*

Authorized Signature

485644A  12-91 FL

APPLICANT OR INSURED COPY

Exhibit X