UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFF FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| PNC BANK, NA, | ) | Case No. 12 CV 3130 |
| | ) | |
| Defendant. | ) | |

## OPINION & ORDER

Defendant PNC Bank ("PNC") has moved to dismiss Plaintiff Jeff Foster's Complaint in its entirety and with prejudice. For the reasons that follow, the motion is granted in part and denied in part.

### I. BACKGROUND

This Complaint concerns two loans currently held by PNC. Foster alleges a series of misdeeds by PNC and its predecessors in interest[1] in their dealings with Foster and his loans. What follows is a summary of the relevant facts pled in Foster's lengthy Complaint.

#### A. The Line of Credit Secured by Foster's Home at 6201 N. Kilpatrick

In 2003, Foster obtained a "Home Equity Line of Credit" (hereinafter "the line of credit") secured by his home located at 6201 N. Kilpatrick in Chicago, Illinois. In March 2009, Foster requested that PNC notify him of the current status of the line of credit and modify it to reduce the interest charge. PNC never produced documentation about the status of his loan. In April 2009, PNC confirmed a modification of the terms of the line of credit, and the Complaint alleges

---

[1] It is unclear from the Complaint when PNC took over the loans. Neither party suggests that the timing of the change in ownership affects the rights of the parties, so for simplicity the court refers to both PNC and its predecessors in interest as "PNC."

that Foster accepted the modification in writing.[2] Foster alleges that although he made timely payments, PNC repeatedly failed to credit his account with the payments he made, and falsely reported that he was delinquent to various consumer credit reporting agencies ("CRAs"). The Complaint appears to allege that these problems continued for several years, despite numerous requests from Foster that PNC correct these errors. Foster admits he ceased making payments on the line of credit, but does not specify when.

**B. The Mortgage Secured by the Real Estate at 56 Fiesta Way**

Foster also had a mortgage loan with PNC secured by real estate located at 56 Fiesta Way, Fort Lauderdale, FL. In November 2009, PNC rejected a loan modification it had previously proposed to Foster, eventually explaining that Foster had failed to return executed documents. Foster alleges that he never received these documents. PNC later approved a modification, but Foster did not accept it. In April 2010, PNC notified Foster that it could not apply the monthly payment he submitted because the required monthly payment was $13,199.95. The Complaint alleges that this new monthly amount claimed "was totally false, having absolutely no basis in fact whatsoever." (Compl. at ¶ 39.) Foster alleges that PNC falsely reported that he was delinquent to various CRAs, and he protested this action.

In February 2011, Foster alleges that PNC falsely informed him that he had not submitted proof of hazard insurance on the property. Though PNC eventually acknowledged that Foster had insurance, Foster alleges that PNC increased his payments by $80 per month anyway, without providing him notice. This increase again resulted in PNC rejecting Foster's monthly payments as insufficient, and reporting him as delinquent to CRAs. Foster alleges that a PNC officer told him that a mistake had been made by PNC, and that he should not make payments;

---

[2] The Complaint incorporates numerous exhibits, including the April 2009 loan modification, but not Foster's alleged writing accepting it.

2

he alleges that he made the payments anyway. Next PNC notified Foster that he had not secured flood insurance, and then later, than he had not secured wind insurance. In November 2011, PNC notified Foster that it had purchased wind coverage in August 2011 at the cost of $37,730, and thereafter further increased his monthly payments to pay for the insurance. Foster alleges that PNC knew this statement was untrue at the time it was made. Foster further alleges that this was an inflated price for wind coverage and that wind coverage was not required under their contract.

Foster filed this six-count Complaint against PNC. There is both diversity and federal question jurisdiction. Count I alleges that PNC violated the Fair Credit Billing Act, 15 U.S.C. § 1666 ("the FCBA"). Count II alleges that PNC violated the Fair Credit Reporting Act, 15 U.S.C. § 1681n ("the FCRA"). Count III alleges that PNC breached its agreements and contracts with Foster. Count IV alleges that PNC violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505-2 ("the ICFA"). Count V alleges common law defamation. Count IV alleges common law fraud.

## II. LEGAL STANDARD

For purposes of a motion to dismiss, the court takes all facts alleged in a complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A motion to dismiss should be granted if the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a

story that holds together."). The plaintiff's complaint must offer "enough facts to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's allegations. *Twombly*, 550 U.S. at 556.

Additionally, to survive a Rule 12(b)(6) motion to dismiss, a complaint must comply with the Federal Rule of Civil Procedure's pleading requirements.[3] Rule 8(a)(2) governs pleadings generally and requires, in relevant part, that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2). Rule 8 reflects a liberal notice pleading requirement that focuses "litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (internal citation and quotation omitted). Allegations of fraud, however, must be pled with particularity. Fed. R. Civ. P. 9(b). This means the plaintiff must, at a minimum, provide the time, place, and content of the alleged false representations, the method by which the representations were communicated, and the identities of the parties to those representations. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

### III. ANALYSIS

#### A. Count I – the FCBA

Foster alleges numerous instances where PNC billed him erroneously and would not fix the errors. The FCBA obligates certain types of creditors to communicate with a consumer to resolve billing errors. But this provision applies only to creditors offering open-end credit plans. 15 U.S.C. § 1602(f). PNC argues that the FCBA is not applicable to Foster's loan because that

---

[3]  Both parties argue about the sufficiency of Foster's pleading of his state law claims using Illinois case law. However, because this case is in federal court, the Federal Rules of Civil Procedure apply. *See Houben v. Telular Corp.*, 309 F.3d 1028, 1031-33 (7th Cir. 2002); *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938).

loan was not an "open-end credit plan." The FCBA defines an open-end credit plan as a "plan under which the creditor reasonably contemplates repeated transactions . . . . and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(j). The parties dispute whether Foster's "Home Equity Line of Credit" (which was secured by a mortgage on his home) is of the type such that PNC could have reasonably contemplated repeated transactions, or whether the loan is really just a one-time mortgage on his home. Numerous courts have treated home equity lines of credit as open-end credit plans at the stage of a motion to dismiss. *E.g. Fernandes v. JPMorgan Chase Bank, N.A.*, 818 F. Supp. 2d 1086, 1095 (N.D. Ill. 2011); *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1374 (N.D. Ga. 2012). Drawing all reasonable inferences in favor of Foster, the court will assume for now that his home equity line of credit was an open-end credit plan, and thus was subject to the FCBA. PNC also asserts that Count I must be dismissed because Foster failed to plead that he submitted his disputes to PNC's proper address as required by the statute. This is so far beyond the requirements of notice pleading that it merits no further discussion. Therefore, Foster's FCBA claim survives PNC's motion to dismiss.

### B. Count II – the FCRA

Foster alleges that PNC made false reports to CRAs, and has refused to correct those reports. The FCRA places various requirements on: 1) CRAs; 2) the entities, such as lenders, that furnish credit information to CRAs ("furnishers"); and 3) the users of credit reports. The statute includes numerous enforcement provisions for its various requirements. Foster's allegations suggest that PNC furnished inaccurate information to CRAs, in violation of § 1681s-2(a), and that PNC failed to investigate and correct its inaccurate reports, in violation of § 1681s-2(b). PNC argues that Foster failed to state a claim under either provision.

As to the alleged violation of § 1681s-2(a), even if PNC furnished inaccurate information to a CRA as Foster alleges, he cannot recover because there is no private right of action for violations of that section.[4] As to the alleged violation of § 1681s-2(b), PNC argues that Foster has not alleged facts sufficient to state a claim because he has not alleged that he ever brought any dispute with PNC to a CRA's attention. Under § 1681s-2(b), a furnisher must investigate any information an individual disputes, and must correct inaccurate information. § 1681s-2(b)(1)(E). The obligation to investigate, however, arises only after the furnisher receives notice of the dispute from a CRA. § 1681s-2(b). In order to prevail on a claim under § 1681s-2(b), a plaintiff must present evidence that a CRA notified the furnisher of a dispute. *Dumas v. Dovenmuehle Mortg. Inc.*, No. 02 C 6271, 2005 WL 1528262, at *5 (N.D. Ill. June 23, 2005). But, again, this level of specificity is not required in the complaint. Foster's Complaint gives PNC fair notice of his claim, and so is sufficient to survive PNC's motion to dismiss.

### C. Count III – Breach of Contract

Foster alleges that PNC's conduct "constitutes a breach [of] its agreements and contracts with" Foster. (Compl. at ¶ 74.) PNC argues that all of Foster's Illinois statutory and common law claims are preempted by the FCRA and thus fail as a matter of law. The FCRA preempts certain state law claims regarding credit reporting. *See* § 1681t(t); § 1681h(e); *Purcell v. Bank of America*, 659 F.3d 622, 624 (7th Cir. 2011) (holding that the FCRA "preempts some state claims *that could arise out of reports to credit agencies*") (emphasis added). As PNC concedes in its reply brief, not *all* contract claims would be preempted by the FCRA. From the pleadings, the court cannot determine whether any or all of Foster's contract claim is preempted by the FCRA.

---

[4] Pursuant to § 1681s-2(c)-(d), only government officials can enforce § 1681s-2(a). Foster attempts to get around this by arguing that PNC is liable for its allegedly false reports under § 1681n, which creates liability for willful violations of the act. But § 1681s-2(c) explicitly exempts § 1681s-2(a) from enforcement under § 1681n.

In any event, Foster's conclusory pleading of his breach of contract claim is too vague to put PNC on notice as to which agreement(s) Foster believes are enforceable contracts PNC breached. Therefore, the court dismisses Count III without prejudice pursuant to Rule 8(a).

### D. Count IV – the ICFA

The ICFA protects consumers against "unfair or deceptive acts or practices." 815 Ill. Comp. Stat. § 505/2. Foster alleges that PNC violated the ICFA in two ways. First, Foster alleges that PNC failed to credit his payments to his accounts; Foster seems to be asserting that this practice is both deceptive and unfair.[5] Second, Foster alleges that PNC engaged in prohibited deception when it represented that it had purchased wind insurance for him, knowing that statement was false, in order to charge Foster additional fees. PNC raises several arguments as to the sufficiency of Foster's ICFA claim generally, which the court analyzes with respect to each of his allegations.

PNC argues that Foster's ICFA claim is really just a breach of contract claim, and as such, cannot give rise to a cause of action under the ICFA. "It is well settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy." *Sklodowski v. Countrywide Home Loans, Inc.*, 832 N.E.2d 189, 196 (Ill. App. Ct. 2005) (internal quotation and citation omitted). While a plaintiff cannot prevail on a claim under the ICFA simply because a defendant does not fulfill his or her obligations under a contract, a plaintiff can assert a cause of action if the defendant's promise was deceptive or unfair at the time the defendant made the promise. *Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 993 (Ill. App. Ct. 2000). Taking the allegations in the Complaint

---

[5] Foster's response brief cites in passing Illinois case law defining unfair business practices. PNC does not respond to this line of argument in its reply. At this stage, the court cannot say that failing to credit Fosters payments does not, as a matter of law, constitute an unfair business practice. Therefore Foster may proceed on that theory.

as true, PNC made two knowingly deceptive representations that suggested Foster had liabilities beyond those created by his loan contracts, because Foster alleges that the monthly payment on the line of credit was not $13,000 and wind insurance was not required for the mortgage on the Florida property. Neither of Foster's allegations is a "naked breach-of-contract claim . . . that defendants did not do what they promised." *Id*. Thus, it does not appear that Foster's IFCA claims are merely contract claims. They might, if proven, give rise to a cause of action under the ICFA.[6]

PNC next argues Foster has not adequately pled his ICFA claim. Because Foster alleges that PNC engaged in deceptive behavior, his ICFA claim "sounds in fraud," and thus is subject to the heightened pleading requirements of Rule 9(b). *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreens Co.*, 631 F.3d 436, 446-47 (7th Cir. 2011) (holding that an ICFA claim for a deceptive practice sounds in fraud and is subject to the heightened pleading standard of Rule 9(b)). Foster has met the particularity required by Rule 9(b) by attaching both supposedly deceptive letters from PNC to his Complaint. (*See* Compl. Ex. N and T, ECF Nos. 1-15 at 1 and 1-16 at 1, respectively.)

The Seventh Circuit has specifically addressed what is required to adequately plead a claim under the ICFA. First, a plaintiff must allege a pecuniary injury caused by the defendant's deception. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575-76 (7th Cir. 2012). Foster's allegation that his credit was damaged because PNC failed to credit his account is sufficient to allege economic damages under the ICFA. *Id.* Also, his allegation that he had to pay for unnecessary wind coverage meets the requirement of pecuniary harm. Second, a plaintiff must "allege that the defendant committed a deceptive or unfair act and intended that the plaintiff rely

---

[6] In light of the court's rejection of PNC's arguments that the ICFA claims are merely contract claims, and that the contract claims are preempted by the FCRA, the court also rejects PNC's argument that the ICFA claim is preempted by the FCRA because the ICFA claim is actually a contract claim.

on that act." *Id.* Both the letters Foster alleges were deceptive were clearly written with the intent that Foster make additional payments to PNC. Accordingly, Foster has adequately pled his ICFA claim.

### E. Count V – Defamation

Foster alleges that PNC defamed him by intentionally and maliciously publishing and disseminating false information about Foster's credit history. PNC argues Foster's defamation claim is preempted by the FCRA. Foster replies that, if the FCRA claim is dismissed, there is no preemption. But since the court allowed the FCRA claim to go forward, preemption of the defamation claim must be addressed.

The FCRA provides, in relevant part, that it preempts any state law claim "with respect to any subject matter regulated under . . . (F) section 1681s-2 of this title, *relating to the responsibilities of persons who furnish information to consumer reporting agencies.*" § 1681t(b)(1)(F). Because Foster's defamation claim rests solely on PNC's allegedly false reports to CRAs, it is preempted by § 1681t(b)(1)(F) of the FCRA. Though Foster cites Illinois cases that allow defamation claims for accusing a businessperson of lacking credit, these cases are not relevant because they predate § 1681t.[7] Foster's claim for defamation is preempted by the FCRA and is dismissed.

---

[7] A previously enacted portion of the FCRA, § 1681h(e) (which is still in effect), preempts defamation claims except those based on willfully false reports. The Seventh Circuit discussed the two preemption provisions, explaining why § 1681t operates to preempt willful defamation claims that were exempted from preemption under § 1681h(e):

> [W]e do not perceive any inconsistency between the two statutes. Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims. Section 1681h(e) does not create a *right* to recover for wilfully false reports; it just says that a particular paragraph does not preempt claims of that stripe. . . . Reading the earlier statute, § 1681h(e), to defeat the later-enacted system in § 1681s-2 and § 1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation.

*Purcell*, 659 F.3d at 624 (emphasis in original).

### F. Count VI – Fraud

Foster's fraud allegations mirror his ICFA allegations. PNC's argument that Foster's fraud claim is not pled with adequate specificity fails for the same reasons discussed in Count IV. PNC also argues Foster's fraud claim is preempted by the FCRA. The fraud claim has nothing to do with credit reporting, and so is not preempted by the FCRA.

### IV. CONCLUSION

Foster has stated a claim as to Counts I, II, V, and VI. Foster's contract claim, Count III, is dismissed without prejudice. Should he wish to re-plead, he must do so by February 22, 2013. Foster's defamation claim, Count IV, is preempted by the FCRA and so is dismissed.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 22, 2013