**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Jeff Foster

Plaintiff,

           vs.

PNC Bank, National Association

Defendant.

No. 12 cv 3130

Honorable Joan B. Gottschall

**PNC BANK, NATIONAL ASSOCIATION'S
ANSWER, AFFIRMATIVE DEFENSES AND COUNTER-CLAIMS
TO PLAINTIFF'S AMENDED COMPLAINT**

NOW COMES Defendant, PNC Bank, National Association ("PNC" or "Defendant"), by and through its attorneys Crowley & Lamb, P.C., and for its answer, affirmative defenses and counterclaim to Plaintiff's Amended Complaint (the "Amended Complaint") filed by Jeff Foster ("Foster" or "Plaintiff") against PNC states as follows:

## THE PARTIES

1.    Plaintiff is a citizen of the State of Florida, who owns real estate located in Chicago, Cook County, Illinois, as well as elsewhere.

**ANSWER:**   PNC is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 1 of the Amended Complaint, and therefore PNC denies them.

2.   Defendant PNC Bank NA is a Delaware National Banking Association with its principal place of business in Pittsburgh, Pennsylvania, which has offices and does business in Chicago, Cook County, Illinois.

**ANSWER:**   PNC admits the allegations in Paragraph 2 of the Amended Complaint.

## JURISDICTION

3.    This Court has jurisdiction over this matter based upon 28 U.S.C. 1331, in that

this dispute involves predominant issues of federal law. Defendant is liable unto Plaintiff pursuant to the provisions of the Fair Credit Billing Act, 15 U.S.C. 1666, et seq., the Fair Credit Reporting Act, 15 U.S.C. 168 in, as well as other applicable federal and state laws. Further, the matter in controversy between Plaintiff and Defendant exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Defendant is also liable to Plaintiff pursuant to the laws of the State of Illinois, which claims may be brought under the Supplemental Jurisdiction of this Court. 28 U.S.C. 1367.

**ANSWER:**  PNC admits that the amount in controversy in this matter exceeds $75,000 and

that the matter involves citizens of different states; PNC denies the remaining allegations in

Paragraph 3 of the Amended Complaint.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the transactions between Plaintiff and Defendant occurred predominately in this District, they involve real estate located in this District and Defendant maintains offices and transacts business in this District.

**ANSWER:**    PNC admits the allegations in Paragraph 4 of the Amended Complaint.

## ALLEGATIONS AS TO PLAINTIFF'S EQUITY CASH LINE OF CREDIT

5.    In 2003, Plaintiff obtained an Equity Cash Line of Credit from Defendant's Predecessor, National City Bank, secured by a mortgage on real estate commonly known as 6201 N. Kilpatrick, Chicago, Illinois, in this district.

**ANSWER:**    PNC admits that Plaintiff was a borrower under an Equity Cash Line of Credit

dated October 30, 2002, and that such line of credit was secured by real estate commonly known

as 6201 N. Kilpatrick, Chicago, Illinois.  PNC denies the remaining allegations in paragraph 5 of

the Amended Complaint.

6.    In 2006, Defendant's predecessor, National City Bank, contacted Plaintiff with an offer to increase the line of credit from approximately $1,200,000 to $1,890,000, with all materials terms under the original agreement to remain the same.

**ANSWER:**    PNC denies the allegations in paragraph 6 of the Amended Complaint.

7.    Although the parties verbally agreed to increase the line of credit in 2006, and the line of credit was actually increased to $1,890,000, the increase was never properly documented and there was never a signed agreement because National City Bank inserted new terms and

conditions into the documentation that were not agreed upon by and between the parties.

**ANSWER:**   PNC denies the allegations in paragraph 7 of the Amended Complaint.

8.   On December 12, 2005, Plaintiff filed a lawsuit against National City Bank for claims relating, in part, to the Fair Credit Reporting Act and the Equity Cash Line of Credit that Plaintiff had originally obtained from Defendant's Predecessor, National City Bank, Case Number 05 C 6992, in the Northern District of Illinois. This lawsuit was settled in January, 2007.

**ANSWER:**   PNC admits that Plaintiff filed a lawsuit against National City Bank in December 2005, Case No. 05 C 6992 and that said lawsuit was settled in January 2007, but denies any remaining allegations contained in paragraph 8 of Plaintiff's Amended Complaint, which mis-characterize the matters which were the subject of said complaint.

9.   On or about October 24, 2008, PNC acquired National City Bank.

**ANSWER:**   PNC denies the allegations in paragraph 9 of the Amended Complaint.

10.   At this time, Plaintiff had four (4) loans with National City Bank, in addition to the equity line of credit. All five loans were performing loans.

**ANSWER:**   PNC admits the allegations in Paragraph 10 of the Amended Complaint.

11.   In or about March, 2009, Plaintiff requested, in writing, that Defendant PNC modify' that line of credit to reduce the interest charged on that loan, to which PNC agreed to. A copy of Plaintiff's written request is attached hereto marked as "Exhibit A" and incorporated herein by reference.

**ANSWER:**   PNC admits that Plaintiff mailed it the letter attached as Exhibit A requesting a

loan modification.   PNC denies the remaining allegations in paragraph 11 to the Amended

Complaint.

12.   At the time he made that request, Plaintiff requested Defendant to provide him with the documents evidencing the then current status of that line of credit.

**ANSWER:**   PNC admits the allegations in Paragraph 12 of the Amended Complaint.

13.   Purportedly in response to Plaintiff's request, Defendant provided to him documents for an Equity Cash Line Mortgage which was for a different transaction in which Plaintiff was not involved.

**ANSWER:**   PNC is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in paragraph 13 of the Amended Complaint, and therefore PNC

denies same.

14.     Despite repeated requests by Plaintiff, Defendant has steadfastly failed and refused to provide him with the documents which evidence the current status of the Equity Cash Line of Credit which Plaintiff obtained from Defendant's predecessor.

**ANSWER:**     PNC denies the allegations in paragraph 14 of the Amended Complaint.

15.     On April 6, 2009, Defendant's predecessor confirmed to Plaintiff that the home equity line of credit had been modified, and set forth the terms of that modification. Plaintiff accepted that modification in writing. A copy of the document setting forth that modification agreement is attached hereto as "Exhibit B" and incorporated by reference.

**ANSWER:**     PNC admits that Plaintiff attached to its Amended Complaint as Exhibit "B" to

his Amended Complaint, a copy of a letter from National City Bank, predecessor in interest to

PNC dated April 6, 2009, but denies that the summary of activity statement was a part of the

letter.  Further, PNC admits the remaining allegations set forth in paragraph 15 of Plaintiff's

Amended Complaint.

16.     Although Plaintiff timely made payments on the line of credit, Defendant repeatedly failed to credit the payments made by Plaintiff in a timely manner.

**ANSWER:**     PNC denies the allegations in paragraph 16 of the Amended Complaint.

17.     Although Plaintiff timely made payments on the line of credit, Defendant falsely reported to various credit reporting agencies that Plaintiff was delinquent on the loan.

**ANSWER:**     PNC denies the allegations in paragraph 17 of the Amended Complaint.

18.     Subsequently, in a letter dated February 18, 2010, Defendant offered to allow Plaintiff to pay off the line of credit by paying 60% of the outstanding balance by April, 2011. A copy of the document constituting that offer is attached hereto as "Exhibit C" and incorporated by reference.

**ANSWER:**     PNC admits that Plaintiff attached to its Amended Complaint a copy of a letter

from PNC dated February 18, 2010 as Exhibit "C" , but denies any remaining allegations

contained in paragraph 18 of Plaintiff's Amended Complaint, which mis-characterize the terms

4

of said letter.

19.     Plaintiff attempted to obtain funds from other lending institutions in order to accept Defendant's offer of February 8, 2010, but was unable to do so because the false information supplied by Defendant to the various credit reporting agencies resulted in false credit reports which stated that Plaintiff was not worthy of obtaining credit from other lending institutions.

**ANSWER:**     PNC lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of Plaintiff's Amended Complaint that Plaintiff attempted to obtain funds from other lending institutions in order to accept Defendant's offer of February 8, 2010 and therefore denies same.   As to the remaining allegations contained in Paragraph 19 of Plaintiff's Amended Complaint, PNC denies same.

20.     Plaintiff's credit had already been adversely affected because of Defendant's wrongful conduct.

**ANSWER:**     PNC denies the allegations in paragraph 20 of the Amended Complaint.

21.     After complaining of Defendant's false actions, which prevented him from obtaining funds to take advantage of Defendant's offer, on June 17, 2011, Defendant sent to Plaintiff a proposed Line of Credit Modification Agreement. A copy of that document is attached hereto as "Exhibit D" and incorporated by reference.

**ANSWER:**     PNC admits that on June 17, 2011 it sent the letter attached to the Amended Complaint as Exhibit D, and denies the remaining allegations in Paragraph 21 of the Amended Complaint.

22.     Plaintiff informed Defendant that he would not sign "Exhibit D" because those documents referred to documents allegedly signed in 2006, which had never been signed by Plaintiff, and because the proposed modification called for an increase in the monthly payment on the line of credit, contrary to the promises which had been previously made.

**ANSWER:**     PNC is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 22 of the Amended Complaint, and therefore PNC denies them.

23.     Even though Plaintiff made timely payments on the line of credit, Defendant failed and refused to credit those payments to his account.

**ANSWER:**     PNC denies the allegations in paragraph 23 of the Amended Complaint.

24.     Plaintiff continued to make timely payments on the line of credit, but Defendant continued to falsely report to the various credit reporting agencies that Plaintiff was delinquent in his payments to this account, falsely stating that Plaintiff was 120 days past due on his account. This conduct has continued throughout Plaintiffs relationship with Defendant.

**ANSWER:**     PNC denies the allegations in paragraph 24 of the Amended Complaint.

25.     After Plaintiffs Amended Complaints to Defendant, Defendant sent to Plaintiff another proposed Line of Credit Modification Agreement on September 22, 2011. A copy of that proposed modification is attached hereto as "Exhibit E" and incorporated by reference.

**ANSWER:**     PNC admits that on September 22, 2011 it sent the letter attached to the Amended Complaint as Exhibit E, and is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 25 of the Amended Complaint, and therefore PNC denies same.

26.     Plaintiff informed Defendant that he would not signed "Exhibit E" because those documents again referred to documents allegedly signed in 2006 which had never been signed by Plaintiff, and it increased the payments on the line of credit even more, and falsely increased the principal balance on the loan.

**ANSWER:**     PNC is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 26 of the Amended Complaint, and therefore PNC denies same.

27.     On October 13, 2011, Plaintiff complained to Defendant in writing of the foregoing conduct, and the repeated false statements and failure of Defendant to timely credit Plaintiffs payments to his account, and the damage caused by Defendant's wrongdoing. A copy of that Amended Complaint is attached hereto as "Exhibit F" and incorporated by reference.

**ANSWER:**     PNC admits that Plaintiff attached as Exhibit "F" to its Amended Complaint a letter dated October 13, 2011 from Daniel Voelker, and states that the document speaks for itself. As to the remaining allegations contained in Paragraph 27 of Plaintiff's Amended Complaint,

PNC denies same.

28.     As a result of Defendant's failure to properly credit the payments he made to the line of credit, Plaintiff repeatedly inquired as to the proper amount due for payments on the equity line of credit. Defendant refused to respond to his requests.

**ANSWER:**     PNC denies the allegations in paragraph 28 of the Amended Complaint.

29.     As a result of Defendant's refusal to inform Plaintiff of the proper amount due for the monthly payment on the line of credit, and the basis for the amount, Plaintiff again wrote to Defendant on January 25, 2012, complaining of Defendant's conduct. A copy of that communication is attached hereto as "Exhibit G" and incorporated herein by reference.

**ANSWER:**     PNC admits that Plaintiff attached as Exhibit "G" to its Amended Complaint a document purporting to be a series of e-mails between Plaintiff and representatives of PNC for the period November 2011 and January 2012, but Plaintiff neither admits nor denies the authenticity and validity of said documents and therefore denies same.  PNC further denies Plaintiff's characterization of Exhibit "G".  As to the remaining allegations contained in Paragraph 29 of Plaintiff's Amended Complaint, PNC denies same.

30.     Defendant has failed and refused to respond to Plaintiffs communications, and has failed and refused to provide Plaintiff with information regarding the current status of this line of credit, and the amount due and owing on that loan.

**ANSWER:**     PNC denies the allegations in paragraph 30 of the Amended Complaint.

31.     As a result of Defendant's refusal to provide Plaintiff with a true and correct statement of the amount due on this loan, Plaintiff ceased making payments on the line of credit because Defendant would not provide Plaintiff with the necessary information in order for Plaintiff to keep the payments current, as set forth in Exhibit G.

**ANSWER:**     PNC admits that the Plaintiff has failed to make current payments on the Equity Line of Credit.  PNC denies the remaining allegations in Paragraph 31 of the Amended Complaint.

32.     On November 30, 2011, Plaintiff obtained a copy of his credit report from Equifax, which report shows the false information reported to Equifax by Defendant.

**ANSWER:** PNC lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 32 and therefore denies same.

33. Plaintiff has attempted to apply for credit to other lending institutions, but has been denied credit due to the false information furnished by Defendant to Equifax and the other credit reporting agencies.

**ANSWER:** PNC denies that it has falsely reported credit information to any credit reporting agency. PNC is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 32 of the Amended Complaint, and therefore PNC denies them.

## ALLEGATIONS AS TO FLORIDA MORTGAGE

34. In addition to this line of credit with Plaintiff, Plaintiff had a mortgage loan with Defendant's predecessor secured by a mortgage on real estate located at 56 Fiesta Way, Fort Lauderdale, FL.

**ANSWER:** PNC admits that Plaintiff has a mortgage loan with PNC evidenced by a Promissory Note dated January 30, 2004, in the original principal amount of $1,100,000.00, and secured by a Mortgage dated January 30, 2004 and recorded against the real estate located at 56 Fiesta Way, Fort Lauderdale, Florida.

35. On May 19, 2009, Defendant's predecessor sent a forbearance agreement to Plaintiff, which Plaintiff accepted. A copy of this agreement is attached hereto as "Exhibit H" and incorporated by reference.

**ANSWER:** PNC admits the allegations in Paragraph 35 of the Amended Complaint.

36. On May 19, 2009, Plaintiff sent a letter to Defendant's predecessor confirming that his loan modification resulting in a 30-year fixed loan at three percent (3%) interest would commence in three months as long as he eliminated his automobile payment of $1945 per month. A copy of that letter is attached here to as "Exhibit I" and incorporated by reference.

**ANSWER:** PNC admits that Plaintiff attached as Exhibit "I" to his Amended Complaint a letter from Plaintiff purportedly addresses to Ms. Jessy Huss, but denies any remaining

allegations contained in paragraph 36 of Plaintiff's Amended Complaint, which mis-characterize the terms of said letter.

37.     Defendant's predecessor acknowledged Plaintiffs communication, in a letter dated May 26, 2009, a copy of which is attached hereto as "Exhibit J" and incorporated herein.

**ANSWER:**     PNC admits that Plaintiff attached as Exhibit "J" to his Amended Complaint a letter from National City Mortgage.  As to the remaining allegations contained in paragraph 37 of Plaintiff's Amended Complaint, PNC denies same.

38.     Contrary to the agreement between the parties, on September 28, 2009, Defendant's predecessor rejected the loan modification in a letter dated September 28, 2009, a copy of which is attached hereto as "Exhibit K" and incorporated by reference.

**ANSWER:**     PNC denies that there was an agreement between the Plaintiff and PNC regarding a loan modification as alleged in Paragraph 38 of the Amended Complaint.  Further, PNC admits it sent the letter attached as Exhibit K to the Amended Complaint.

39.     Plaintiff made several inquiries to Defendant's predecessor attempting to determine the reason for the rejection of the loan modification.  No person at Defendant's predecessor was able to give Plaintiff any reason for the rejection of the loan modification.

**ANSWER:**     PNC denies that it was unable to provide Plaintiff with a reason for the rejection of the loan modification.  PNC is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 39 of the Amended Complaint, and therefore PNC denies them.

40.     On November 24, 2009, Defendant sent a notice to Plaintiff that his loan modification had been rejected because he had failed to return the executed documents. A copy of that notification is attached hereto as "Exhibit L" and incorporated by reference.

**ANSWER:**     PNC admits the allegations in Paragraph 40 of the Amended Complaint.

41.     At no time had Defendant provided Plaintiff with the documents to which reference is made in Exhibit L, thus Defendant made it impossible for Plaintiff to comply with

9

what it contended was the reason for the rejection of the loan modification.

**ANSWER:**    PNC denies the allegations in Paragraph 41 of the Amended Complaint.

42.    Subsequent to the notification that his loan modification had been rejected, he was notified that his loan modification had been approved, which modification increased his monthly payment, including escrow, from $6000 to $7409, and required closing costs in the amount of $13,729.34. A copy of the notification is attached hereto as "Exhibit M" and incorporated by reference.

**ANSWER:**    PNC admits that Plaintiff attached as Exhibit "M" to his Amended Complaint a

letter from National City Mortgage.  As to the remaining allegations set forth in paragraph 42,

PNC denies same.

43.    Plaintiff refused to agree to this modification and objected to this action in writing on November 16, 2009, and requested Defendant to rectify its errors. Plaintiffs request is attached hereto as "Exhibit N" and incorporated herein.

**ANSWER:**    PNC denies that it made any "errors" that it was required to "rectify."  PNC

admits the remaining allegations in Paragraph 43 of the Amended Complaint

44.    Suddenly, on April 2, 2010, Defendant notified Plaintiff that it could not accept payments Plaintiff was attempting to make, because his monthly payment was $13,199.95. A copy of such notification is attached hereto as "Exhibit "O".

**ANSWER:**    PNC admits that on April 2, 2010, it notified Plaintiff that it could not accept

payments less than the then current payment amount of $13,1995.95.  PNC denies that the

notification was "sudden."

45.    This claim was totally false, having absolutely no basis in fact whatsoever. Plaintiff was required to notify Defendant of its wrongful conduct.

**ANSWER:**    PNC denies the allegations in paragraph 45 of the Amended Complaint.

46.    Again, Defendant falsely informed various credit agencies that Plaintiff was delinquent in his payment, knowing full well that this was not true.

**ANSWER:**    PNC denies the allegations in paragraph 46 of the Amended Complaint.

47.    On February 3, 2011, Defendant falsely informed Plaintiff that he had not

obtained proof of hazard insurance on the property which was collateral for the loan.

**ANSWER:**     PNC denies the allegations in paragraph 47 of the Amended Complaint.

48.     After receiving this notice, Plaintiff repeatedly communicated with Defendant, providing proof that he had maintained hazard insurance on the property.

**ANSWER:**     PNC is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 48 of the Amended Complaint, and therefore PNC denies them.

49.     Defendant finally acknowledged Plaintiff's proof of hazard insurance on the property in a letter dated July 26, 2011, a copy of which is attached hereto as "Exhibit "P".

**ANSWER:**     PNC admits that Plaintiff attached as Exhibit "P" to his Amended Complaint a letter from Plaintiff dated July 26, 2011, but denies any remaining allegations contained in paragraph  49 of Plaintiff's Amended Complaint, which mis-characterize the terms of said letter.

50.     Despite acknowledging that Plaintiff had secured that hazard insurance, and stating that any charges to his account due to Defendant failure to acknowledge the existence of this insurance, Defendant increased Plaintiffs monthly payment by Eighty ($80.00) per month without justification.

**ANSWER:**     PNC admits that it acknowledged that Plaintiff had obtained hazard insurance and denies all remaining allegation in Paragraph 50 of the Amended Complaint.

51.     Although Plaintiff repeatedly inquired why his monthly payment had been increased, no one affiliated with Defendant could provide him with an explanation of such action.

**ANSWER:**     PNC denies that it was unable to provide an explanation for any payment increase.  PNC is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 51 of the Amended Complaint, and therefore PNC denies them.

52.     Almost immediately, Defendant informed Plaintiff that he had not secured flood insurance on the property which was collateral for the loan. Defendant finally acknowledged that

Plaintiff had secured proper flood insurance.

**ANSWER:**    PNC admits that on August 1, 2011, it confirmed by letter its receipt of evidence

that Plaintiff had obtained flood insurance.  PNC denies the remaining allegations in Paragraph

52 of the Amended Complaint.

53.    On September 1, 2011, Defendant informed Plaintiff that it could not accept his monthly payment in the amount of $6156.83, because an additional amount of $80.84 was due and owing. Copies of that notification to Plaintiff are attached hereto as Exhibits "Q" and "R" and incorporated by reference.

**ANSWER:**    PNC admits the allegations in Paragraph 53 of the Amended Complaint.

54.    This notification was apparently caused by the fact that Defendant had raised the amount of Plaintiffs monthly payment without notice to him.

**ANSWER:**    PNC denies the allegations in Paragraph 54 of the Amended Complaint.

55.    When Plaintiff inquired as to the reason for this increase in his monthly payment, again no one was able to provide him with a reason for this action.

**ANSWER:**    PNC denies the allegations in Paragraph 55 of the Amended Complaint.

56.    On September 16, 2011, Defendant sent a notification to Plaintiff falsely stating that he was delinquent by two monthly payments.  A copy of that notification is attached hereto as "Exhibit S" and incorporated by reference.

**ANSWER:**    PNC admits that on September 16, 2011, it sent the notification attached as

Exhibit S to the Amended Complaint advising Plaintiff that he was delinquent by two monthly

payments.  PNC denies that the notification was false.

57.    On September 22, 2011, Defendant refused to accept the payment of $6156 tendered by Plaintiff but returned to Plaintiff the amount of $4964.04, having improperly deducted costs and fees from the amount he had tendered, with the indication that it would accept no payments from him in any amount less than $6237.67. A copy of that notification is attached hereto as "Exhibit R" and incorporated by reference.

**ANSWER:**    PNC denies that any deduction of costs and fees was improper and admits the

remaining allegations in Paragraph 57 of the Amended Complaint.

58.     On September 29, 2011, after receipt of Exhibits "Q" and "R," Plaintiff visited Defendant's facility in person in Chicago, IL, where he spoke with Defendant's officer, Jose Melendez.  Plaintiff offered to make the allegedly delinquent payment, and inquired why his payment had been increased, and of the status of his account.

**ANSWER:**     PNC is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 58 of the Amended Complaint, and therefore PNC denies them.

59.     Jose Melendez told Plaintiff that there had been a mistake, and refused to accept his payment, stating that he would "fix the problem."

**ANSWER:**     PNC is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 59 of the Amended Complaint, and therefore PNC denies them.

60.     Despite being told that he should not make any further payments, Plaintiff paid the amount of $6237 for each month of September, October and November, 2011.

**ANSWER:**     PNC admits that payments each in the amount of $6,237.00 were received from Plaintiff and applied to payments due for the months of September, October and November 2011.  PNC denies the remaining allegations in Paragraph 60 of the Amended Complaint.

61.     Plaintiff repeatedly made inquiries as to why his monthly payment had been increased, and the status of his account.

**ANSWER:**     PNC is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 61 of the Amended Complaint, and therefore PNC denies them.

62.     On or about December 2, 2011, Plaintiff received a letter from Defendant, stating that Defendant could not determine the reason for any of the actions taken by Defendant regarding Plaintiffs account.  A copy of that notification is attached as Exhibit "T" and incorporated herein.

**ANSWER:**     PNC admits it sent the letter attached to the Amended Complaint as Exhibit T.

13

PNC denies the remaining allegations in Paragraph 62 of the Amended Complaint.

63.     During this time, on November 18, 2011, Defendant informed Plaintiff that since he had not obtained Comprehensive Wind coverage, Defendant had purchased such coverage for the property at a cost $37,730. A copy of that notification is attached as "Exhibit U" and incorporated herein.

**ANSWER:**     PNC admits the allegations in Paragraph 63 of the Amended Complaint.

64.     Defendant falsely informed Plaintiff that it had purchased this insurance in August, which defendant knew was untrue when it made that statement.

**ANSWER:**     PNC denies the allegations in Paragraph 64 of the Amended Complaint.

65.     Plaintiff was under no obligation to obtain Comprehensive Wind coverage for the subject property. Defendant's demand that he obtain such coverage, and its purported purchase of such coverage for an amount approximately ten times higher than the true cost of such coverage were unreasonable and totally without foundation, justification or excuse.

**ANSWER:**     PNC denies the allegations in Paragraph 65 of the Amended Complaint.

66.     Nevertheless, even though he was not required to do so, Plaintiff obtained such Comprehensive Wind coverage, and provided Defendant with proof of such insurance.

**ANSWER:**     PNC admits that it received notification from the Plaintiff that he had obtained Comprehensive Wind coverage.  PNC denies that Plaintiff was not requested to obtain such coverage.

67.     Despite the fact that no Comprehensive Wind coverage was necessary for the property, and despite the fact that Plaintiff had obtained such coverage, Defendant increased Plaintiffs monthly payment through a demand for increased escrow deposits based upon the unnecessary and inflated alleged disbursement of $37,730 for such insurance. A copy of Defendant's notification to Plaintiff dated January 6, 2012, of such increased payments is attached hereto as "Exhibit V" and incorporated by reference.

**ANSWER:**     PNC denies that it increased escrow deposits based upon "unnecessary and inflated" disbursements and that Comprehensive Wind coverage was not required for the property.  PNC admits that Plaintiff eventually obtained Comprehensive Wind coverage.

68.     All during this time that it was refusing to accept Plaintiffs monthly payments on this account, and erroneously informing him that he should not make payments, Defendant

14

continued to make reports to credit reporting agencies that Plaintiff was delinquent in his payments, further damaging Plaintiffs credit. A copy of Defendant's acknowledgment dated January 24, 2012 of those facts is attached hereto as Exhibit "W" and incorporated by reference.

**ANSWER:** PNC denies that it "erroneously" informed Plaintiff not to make payments and

further denies the characterization of Exhibit W to the Amended Complaint. PNC admits that it

continued to report Plaintiff's delinquencies to various credit reporting agencies.

69. Finally, after repeated attempts to determine the reason for Defendant's increase of his monthly payments, Defendant finally acknowledged that the reason for the increase of his monthly payments was not valid.

**ANSWER:** PNC denies the allegations in paragraph 69 of the Amended Complaint.

70. At virtually the same time it was acknowledging that Plaintiffs protests that the actions taken by Defendant increasing his monthly payments and declaring his account delinquent were false, Defendant then falsely claimed that Plaintiff had left the property vacant. A copy of that notification dated January 18, 2012, is attached hereto as "Exhibit X" and incorporated by reference.

**ANSWER:** PNC admits that it sent Plaintiff the notification attached as Exhibit X to the

Amended Complaint. PNC denies the remaining allegations in paragraph 70 of the Amended

Complaint.

71. When Plaintiff responded to "Exhibit X" by calling the number listed in that letter, he discovered that the telephone number was to Defendant's collections department, which insisted that he was delinquent in his payments on this account, and demanded payments from him which were not due.

**ANSWER:** PNC is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in paragraph 71 of the Amended Complaint, and therefore PNC

denies them.

72. As a result of Defendant's false claim that the property was vacant, Fireman's Fund, the issuer of Plaintiffs property insurance, cancelled that policy, relying upon Defendant's false statement that the property was vacant. A copy of the notification of such cancellation is attached hereto as "Exhibit Y" and incorporated by reference.

**ANSWER:** PNC denies that it made false statements regarding the occupancy of the property.

15

PNC is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 71 of the Amended Complaint, and therefore PNC denies them.

## COUNT I-FAIR CREDIT BILLING ACT

73. Plaintiff incorporates as though fully set forth herein Paragraphs 1 through 72 as Paragraph 73 of Count I.

**ANSWER:** PNC incorporates the admissions, denials, and averments contained in paragraphs 1 through 72 as this answer as if fully rewritten here in response to paragraph 73 of the Amended Complaint.

74. Although Plaintiff has repeatedly notified Defendant of its numerous billing errors, as required by law, and defendant failed to timely or properly respond, on multiple occasions and each such violation gives rise to a distinct action under the CBA, 15 U.S.C. 1666, et. seq.

**ANSWER:** PNC denies the allegations in paragraph 74 of the Amended Complaint, including all subparagraphs thereto.

### AFFIRMATIVE DEFENSES:

PNC alleges and asserts as if fully plead herein as affirmative defenses to the allegations of Count I of Plaintiff's Amended Complaint, those Affirmative Defenses as to All Counts and those Affirmative Defenses specific to Count I of Plaintiff's Amended Complaint, set forth hereinafter

WHEREFORE, PNC Bank, National Association , respectfully requests this Court enter an order dismissing Count I of Plaintiff's Amended Complaint, with prejudice and for such further relief as this court deems reasonable

### COUNT II-FAIR CREDIT REPORTING ACT

16

75.     Plaintiff incorporates as though fully set forth herein Paragraph 1 through 72 as Paragraph 75 of Count II.

**ANSWER:**     PNC incorporates the admissions, denials, and averments contained in paragraphs

1 through 74 as this answer as if fully rewritten here in response to paragraph 75 of the Amended

Complaint.

76.     Defendant has repeatedly made false reports to various credit reporting agencies that Plaintiff was delinquent in his payments to Defendant, when Defendant knew that said statements were false.

**ANSWER:**     PNC denies the allegations in paragraph 76 of the Amended Complaint.

77.     Although Plaintiff has repeatedly demanded that Defendant cease making false reports to credit agencies regarding the status of his accounts and his payments thereon, Defendant has refused to correct those reports and has repeated that information which it knows to be false.

**ANSWER:**     PNC denies the allegations in paragraph 77 of the Amended Complaint.

78.     Defendant's conduct in making such false reports to various credit agencies is a violation of the Fair Credit Reporting Act, as a result of which Defendant is liable to Plaintiff pursuant to the provisions of 15 U.S.C. l681n.

**ANSWER:**     PNC denies the allegations in paragraph 78 of the Amended Complaint.

79.     Plaintiff has suffered actual damage by Defendant's conduct in that his credit has been impaired, which has interfered with the operations of his business of buying and selling real estate.

**ANSWER:**     PNC denies the allegations in paragraph 79 of the Amended Complaint.

80.     Defendant's conduct has been willful, wanton, intentional and reckless, as a result of which Plaintiff is entitled to punitive damages.

**ANSWER:**     PNC denies the allegations in paragraph 80 of the Amended Complaint, including

all subparagraphs thereto.

## **AFFIRMATIVE DEFENSES**:

PNC alleges and asserts as if fully plead herein as affirmative defenses to the allegations

of Count I of Plaintiff's Amended Complaint, those Affirmative Defenses as to All Counts and those Affirmative Defenses specific to Count II of Plaintiff's Amended Complaint, set forth hereinafter

WHEREFORE, PNC Bank, National Association , respectfully requests this Court enter an order dismissing Count II of Plaintiff's Amended Complaint, with prejudice and for such further relief as this court deems reasonable

### COUNT III-BREACH OF CONTRACT OF EQUITY CASH LINE OF CREDIT

81. Plaintiff incorporates as though fully set forth herein paragraphs 1 through 72 as paragraph 81 of Count III.

**ANSWER:** PNC incorporates the admissions, denials, and averments contained in paragraphs 1 through 80 as this answer as if fully rewritten here in response to paragraph 81 of the Amended Complaint.

82. Defendant's conduct constitutes a breach if its agreement and contract with Plaintiff regarding the Equity Cash Line of Credit.

**ANSWER:** PNC denies the allegations in paragraph 82 of the Amended Complaint.

83. Specifically, Defendant's failure to provide Plaintiff with documentation regarding the status of the line of credit and Defendant's failure to correctly and timely credit Plaintiffs payments are breaches of the contracts between the parties.

**ANSWER:** PNC denies the allegations in paragraph 83 of the Amended Complaint.

84. As a result of Defendant's conduct, Plaintiff has been denied the benefit of agreements he has made with Defendant, and has been forced to make payments to Defendant in amounts which were not due to it.

**ANSWER:** PNC denies the allegations in paragraph 84 of the Amended Complaint.

85. Defendant's breaches were in bad faith, which entitle Plaintiff to punitive damages.

**ANSWER:** PNC denies the allegations in paragraph 79 of the Amended Complaint, including

18

all subparagraphs thereto.

**AFFIRMATIVE DEFENSES**:

PNC alleges and asserts as if fully plead herein as affirmative defenses to the allegations of Count I of Plaintiff's Amended Complaint, those Affirmative Defenses as to All Counts and those Affirmative Defenses specific to Count III of Plaintiff's Amended Complaint, set forth hereinafter

WHEREFORE, PNC Bank, National Association , respectfully requests this Court enter an order dismissing Count III of Plaintiff's Amended Complaint, with prejudice and for such further relief as this court deems reasonable

**COUNT IV-BREACH OF CONTRACT OF FLORIDA MORTGAGE**

86.     Plaintiff incorporates as though fully set forth herein Paragraphs 1 through 72 as Paragraph 86 of Count IV.

**ANSWER:**     PNC incorporates the admissions, denials, and averments contained in paragraphs 1 through 85 as this answer as if fully rewritten here in response to paragraph 86 of the Amended Complaint.

87.     Defendant's conduct constitutes a breach of the Agreement between the parties relating to the mortgage on the Florida property.

**ANSWER:**     PNC denies the allegations in paragraph 87 of the Amended Complaint.

88.     Specifically, Defendant's failure to:
- provide proper documentation to Plaintiff;
- Defendant's failure to accept Plaintiffs timely payments;
- Defendant's failure to acknowledge Plaintiffs proof of hazard insurance;
- Defendant's unilateral changes to the Agreement, including increased payments without notice; and
- Defendant's requirement that Plaintiff obtain Comprehensive Wind coverage

**ANSWER:**     PNC denies the allegations in paragraph 88 of the Amended Complaint.

89.     As a result of Defendant's conduct, Plaintiff has been denied the benefit of

agreements he has made with Defendant, and has been forced to make payments to Defendant in amounts which were not due to it.

**ANSWER:**     PNC denies the allegations in paragraph 89 of the Amended Complaint.

90.     Defendant's breaches were in bad faith, which entitle Plaintiff to punitive damages.

**ANSWER:**     PNC denies the allegations in paragraph 90 of the Amended Complaint, including all subparagraphs thereto.

## **AFFIRMATIVE DEFENSES**:

PNC alleges and asserts as if fully plead herein as affirmative defenses to the allegations of Count I of Plaintiff's Amended Complaint, those Affirmative Defenses as to All Counts and those Affirmative Defenses specific to Count IV of Plaintiff's Amended Complaint, set forth hereinafter


WHEREFORE, PNC Bank, National Association , respectfully requests this Court enter an order dismissing Count IV of Plaintiff's Amended Complaint, with prejudice and for such further relief as this court deems reasonable.


## **COUNT V-CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES**

91.     Plaintiff incorporates as though fully set forth herein Paragraphs 1 through 72 as Paragraph 91 of Count V.

**ANSWER:**     PNC incorporates the admissions, denials, and averments contained in paragraphs 1 through 90 as this answer as if fully rewritten here in response to paragraph 91 of the Amended Complaint.

92.     The actions of Defendant, particularly the actions in failing to credit payments made by Plaintiff to his account and requiring Plaintiff to make additional deposits into his escrow accounts, were not warranted and constitute unfair and deceptive acts and practices as

defined in the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

**ANSWER:**   PNC denies the allegations in paragraph 92 of the Amended Complaint, including all subparagraphs thereto.

## AFFIRMATIVE DEFENSES:

PNC alleges and asserts as if fully plead herein as affirmative defenses to the allegations of Count I of Plaintiff's Amended Complaint, those Affirmative Defenses as to All Counts of Plaintiff's Amended Complaint, set forth hereinafter

WHEREFORE, PNC Bank, National Association , respectfully requests this Court enter an order dismissing Count V of Plaintiff's Amended Complaint, with prejudice and for such further relief as this court deems reasonable

## COUNT VI - FRAUD

93.     Plaintiff incorporates as though fully set forth herein Paragraphs 1 through 72 as Paragraph 93 of Count IV.

**ANSWER:**   PNC incorporates the admissions, denials, and averments contained in paragraphs 1 through 92 as this answer as if fully rewritten here in response to paragraph 93 of the Amended Complaint.

94.     Defendant repeatedly refused to accept payments made by Plaintiff in a timely manner based on claims that the amount of monthly payment due had increased.

**ANSWER:**   PNC denies the allegations in paragraph 94 of the Amended Complaint.

95.     Each time Plaintiff challenged those assertions, Defendant assigned a different reason for the increase in monthly payment.  Each reason given by Defendant for such increase was false. Nevertheless, Plaintiff continued to make payments in the increased amount, but Defendant continued to refuse to accept Plaintiffs payments, and charged him with costs and fees which were not due.

**ANSWER:**   PNC denies the allegations in paragraph 95 of the Amended Complaint.

21

96.     Defendant repeatedly reduced the amount in Plaintiffs escrow account with no accounting for the reason of such reduction and no evidence that it had made any legitimate payments from that escrow account. Defendant used these unexplained deductions to further demand increases in Plaintiffs monthly payment on the loans with Defendant.

**ANSWER:**     PNC denies the allegations in paragraph 96 of the Amended Complaint.

97.     Defendant's conduct, as alleged herein, constitutes a systematic scheme to charge and attempt to collect from plaintiff funds which he did not owe, and to unnecessarily force place insurance which was unnecessary and not required by any agreements between Plaintiff and Defendant, at a cost which was far in excess of any amount such insurance would cost.

**ANSWER:**     PNC denies the allegations in paragraph 97 of the Amended Complaint.

98.     Defendant's conduct further resulted in fraudulent and false demands from Defendant that Plaintiff make payments to it which were not due.

**ANSWER:**     PNC denies the allegations in paragraph 98 of the Amended Complaint.

99.     As a result of Defendant's conduct, Plaintiff has been forced to make payments to Defendant in amounts which were not due it.

**ANSWER:**     PNC denies the allegations in paragraph 99 of the Amended Complaint.

100.     Defendant's conduct was in bad faith, which entitles Plaintiff to punitive damages.

**ANSWER:**     PNC denies the allegations in paragraph 100 of the Amended Complaint, including all subparagraphs thereto.

## **AFFIRMATIVE DEFENSESES AS TO ALL COUNTS**

1.     Plaintiff has failed to state claims upon which relief can be granted.

2.     Plaintiff's claims for punitive damages are barred because the alleged acts or omissions of PNC: (1) do not rise to the level required to sustain an award of punitive damages, (2) do not evidence malicious, reckless, or fraudulent intent to deny Plaintiff his protected rights, (3) are not so wanton or willful as to support an award of punitive damages, and (4) do not otherwise entitle Plaintiff to punitive damages.

3.      Plaintiff's claims for punitive damages are barred because of PNC's good faith efforts to comply with the applicable state and federal laws. Plaintiff's claims for punitive damages for alleged breach of contract are barred under Illinois law.

4.      Plaintiff's claims are barred, in whole or in part, by reason of his failure to mitigate or minimize his damages, the existence of which PNC denies.

5.      Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and unclean hands.

6.      Plaintiff is estopped by his own acts or omissions from bringing some or all of the claims in the Complaint.

7.      Some or all of the damages that Plaintiff seeks are not recoverable under the law.

8.      Any alleged harm to Plaintiff was caused by persons or entities other than PNC and over whom PNC had no control or right of control.

9.      To the extent to which, if any, the Complaint claims that PNC acted in violation of Illinois law, Plaintiff's claims are barred, in whole or in part, because they are preempted by the National Bank Act, 12 U.S.C. § 21 *et seq.*, and associated regulations of the Office of the Comptroller of the Currency, 12 C.F.R. § 34.1 *et seq.*, which expressly permit PNC to make loans free from state-law interference.

10.     Plaintiff's claims are barred, in whole or in part, by the applicable statues of limitations.

11.     Plaintiff's claims are barred by failure of consideration.

12.     Plaintiff alleged damages were not caused by any act or omission of PNC or its corporate predecessor.

13.     Some or all of Plaintiff's claims are barred by the parole evidence rule and/or the statute of frauds.

14.     Even if Plaintiff otherwise had a colorable claim under FCBA or otherwise, which PNC disputes, for the reasons set forth in  PNC's Counterclaims, Plaintiff's claims should be set off by the millions of dollars to which Defendant is entitled from Plaintiff.

15.     PNC reserves the right to amend this filing to assert any and all applicable affirmative defenses which discovery may reveal appropriate.

## CLAIM SPECIFIC AFFIRMATIVE DEFENSES

### COUNT I- FAIR CREDIT BILLING ACT (FCBA)

#### FIRST AFFIRMATIVE DEFENSE:

16.     The extension of credit upon which Plaintiff bases Count I was not an open-end credit plan as defined under 15 USC § 1602(i) and therefore Plaintiff can not maintain a cause of action under FCBA.

#### SECOND AFFIRMATIVE DEFENSE:

17.     The correspondence appended to Plaintiff's Complaint does not constitute a written notice of purported billing errors in compliance with the FCBA and Plaintiff has not satisfied a condition precedent to bringing a claim under the FCBA.

### COUNT II – FAIR CREDIT REPORTING ACT

#### FIRST AFFIRMATIVE DEFENSE:

18.     As a private individual Plaintiff can not bring a cause of action under § 1681s-2(a) because only governmental officials can bring an action under that section pursuant to the express provisions of § 1681s-2(c) and (d).

#### SECOND AFFIRMATIVE DEFENSE:

24

19.     Even if plaintiff had standing to pursue a private cause of action Defendant under the FCRA, Plaintiff failed to register a dispute with the credit reporting agencies and, therefore did not satisfy a condition precedent to bringing a claim against Defendant under that Act.

### THIRD AFFIRMATIVE DEFENSE:

20.     Plaintiff's claimed entitlement to relief pursuant to § 1681n of the FCRA is expressly exempted by § 1681s-2(c) of the FCRA and, therefore, Plaintiff can not sustain a claim for relief under § 1681n.

### FIFTH AFFIRMATIVE DEFENSE:

21.     Plaintiff's purported damages, if any, were caused by factors wholly unrelated to any alleged act or omission of Defendant and, therefore, Plaintiff can not recover from Defendant under the FCRA.

## COUNT III – BREACH OF CONTRACT – ILLINOIS LOAN

### FIRST AFFIRMATIVE DEFENSE:

22.     Plaintiff failed to timely make the payment due on the Note for November, 2009 and at various times thereafter, and therefore breached his contract with Defendant.

### SECOND AFFIRMATIVE DEFENSE:

23.     To the extent Plaintiff's claim arises out of breach of alleged oral contract to modify the Illinois Loan as alleged in Paragraph 22 of his Complaint, there is no writing signed by Defendant memorializing the purported oral modification agreement and, therefore that Plaintiff's claim is barred by the Statute of Frauds embodied in 740 ILCS 80/1, et. seq.

### THIRD AFFIRMATIVE DEFENSE:

24.     Plaintiff's purported damages, if any, were caused by factors wholly unrelated to any alleged act or omission of Defendant and, therefore, Plaintiff can not recover from

Defendant.

## COUNT IV – BREACH OF CONTRACT, FLORIDA LOAN

### FIRST AFFIRMATIVE DEFENSE:

25.     Effective May 20, 2010 Plaintiff and Defendant entered into a Loan Modification Agreement for the Florida Loan.  Pursuant to that Agreement Plaintiff expressly released any and all claims against Defendant from the beginning of the world until May 20, 2010 with respect to the Florida Loan.  To the extent Count IV of Plaintiff's Complaint alleges acts or omissions occurring prior to May 20, 2010 Plaintiff is barred by his express release from pursuing any claim arising directly or indirectly from those prior alleged acts or omissions.

WHEREFORE, PNC Bank, National Association, respectfully requests this Court enter an order dismissing Count I of Plaintiff's Amended Complaint, with prejudice and for such further relief as this court deems reasonable

### COUNTERCLAIMS

### COUNT I - JUDGMENT ON FLORIDA NOTE

Now comes PNC Bank, National Association ("PNC") and for its First Counterclaim against Plaintiff Jeffrey M. Foster a/k/a Jeff Foster ("Foster"), states, alleges, and avers as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over the claims set forth in this Counterclaim on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §1332. Plaintiff alleges that he is an Illinois citizen. Defendant PNC Bank, National Association is a citizen of the state of Delaware.  The amount in controversy exceeds $75,000.00 excluding interest and costs.

2.     This Court has jurisdiction to adjudicate this Counterclaim pursuant to 28 U.S.C.

26

§1367, because this suit involves the note and mortgage upon which this Counterclaim is brought.

## FACTS

3.     PNC is the successor by merger to National City Mortgage, Inc., formerly known as National City Mortgage Co., successor by merger to Mid America Bank, FSB.

4.     On or about January 30, 2004, Plaintiff extended credit to Foster in the amount of $1,100,000.00 (the "Florida Loan"). The Florida Loan is evidenced by an Adjustable Rate Note executed by Foster in favor of the Plaintiff (the "Florida Note").  A copy of the Florida Note is attached hereto as _Exhibit A_ and by express reference made a part hereof.

5.     Florida Note is secured by a mortgage dated January 30, 2004, executed by Jeff Foster (the "Florida Mortgage") for the property commonly known as 56 Fiesta Way, Fort Lauderdale, Florida 33301 (the "Florida Property").

6.     A true and accurate copy of the Florida Mortgage is attached as _Exhibit B_ and by express reference made a part hereof.

7.     That the Florida Note dictates that failure to pay the monthly principal and interest payments is an event of default by Foster upon the terms of the Florida Note.

8.     As a result of said default, the Plaintiff accelerated all indebtedness under the Note as is reflected in separate default letters dated January 19, 2012, February 3, 2012 and April 17, 2012 (the "Default Letters"), sent by the Plaintiff to Foster.  True and correct copies of the Default Letters are attached hereto as _Exhibit C_ and by express reference made a part hereof.

9.     As of December 31, 2012, there was due and owing to PNC under the Florida Note outstanding principal in the amount of $1,095,615.54.  In addition, PNC is due and owing accrued and unpaid interest, advances and attorneys fees and costs in connection with the

Florida Note.

10. Therefore, PNC is entitled to judgment on the Florida Note.

WHEREFORE, PNC prays for judgment against Jeffrey Foster in the principal amount of $1,095,615.54, plus accrued and unpaid interest, charges and attorneys fees and costs other amounts.

## COUNT II - JUDGMENT ON HELOC

For its Second Counterclaim against Plaintiff Jeff Foster, PNC states, alleges, and avers as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the claims set forth in this Counterclaim on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §1332. Plaintiff alleges that he is an Illinois citizen. Defendant PNC Bank, National Association is s citizen of the state of Delaware. The amount in controversy exceeds $75,000.00 excluding interest and costs.

2. This Court has jurisdiction to adjudicate this Counterclaim pursuant to 28 U.S.C. §1367, because this suit involves the note and mortgage upon which this Counterclaim is brought.

## FACTS

3. PNC is the successor by merger to National City Mortgage, Inc., formerly known as National City Mortgage Co., successor by merger to Mid America Bank, FSB.

4. On or about May 31, 2006, Plaintiff extended credit to Foster in the amount of $1,890,000.00 (the "HELOC Loan"). The HELOC Loan is evidenced by a Home Equity Line of Credit Agreement and Promissory Note executed by Foster in favor of the Plaintiff (the

28

"HELOC Note"). A copy of the HELOC Note is attached hereto as *Exhibit D* and by express reference made a part hereof.

5.      The HELOC Note is secured by a mortgage dated May 31, 2006, executed by Foster (the "Illinois Mortgage") for the property commonly known as 6201 N. Kilpatrick Ave., Chicago, IL (the "Illinois Property").

6.      A true and accurate copy of the Illinois Mortgage is attached as *Exhibit E*, and by express reference made a part hereof.

7.      That the HELOC Note provides that failure to pay the monthly principal and interest payments is an event of default by Foster upon the terms of the HELOC Note.

8.      As a result of said default, the Plaintiff accelerated all indebtedness under the Note as is reflected in separate default letters dated October 19, 2011 and April 24, 2012 (the "Illinois Default Letters"), sent by the Plaintiff to Foster. True and correct copies of the Illinois Default Letters are attached hereto as *Exhibit F* and by express reference made a part hereof.

9.      As of June 28, 2013, there is (a) principal due and owing under the HELOC Note in the total amount of $1,868,151.55, (b) interest due and owing under the HELOC Note in the total amount of $40,694.60, (c) plus other charges totaling $1,711.62 and (d) additional legal and consultant fees and expenses, appraisal fees, and other costs incurred under the HELOC Note not included therein, for a total amount owing (excluding attorneys fees and costs) of $1,911,182.32.

10.     Therefore, PNC is entitled to judgment on the HELOC Note.

WHEREFORE, PNC prays for judgment against Jeffrey Foster in the principal; amount of $1,911,182.32, plus accrued and unpaid interest, late charges and other advances by the Plaintiff, plus attorneys fees and costs.

## COUNT III – FORECLOSURE OF 6201 N. KILPATRICK MORTGAGE

For its Third Counterclaim against Plaintiff Jeff Foster, PNC states, alleges, and avers as follows:

11.     PNC expressly incorporates as though fully set forth herein paragraphs 1-10 of its Counterclaims as Paragraph 11 of the Counterclaims.

12.     The Plaintiff files this Count I pursuant to 735 ILCS 5/15-1101, _et_ _seq_., to foreclose the Mortgage, and in connection therewith joins the following persons as defendants:

(a)     Jeffrey M. Foster

13.     Attached are the following exhibits which are true and correct copies of the originals thereof:

A.     _Exhibit D_ is a copy of the HELOC Note;
B.     _Exhibit E_ is a copy of the Illinois Mortgage;
C.     _Exhibit F_ is a copy of the default letter dated July 3, 2012

14.     Information concerning the Mortgage:

A.     Nature of Instrument:  Mortgage

B.     Date of Mortgage:     May 31, 2006

C.     Name of Mortgagor:   Jeffrey M. Foster

D.     Name of Mortgagee:  MidAmerica Bank, fsb (n/k/a PNC Bank, National Association)

E.     Date and place of recording:  June 22, 2006

F.     Identification of recording:    Document No. 0617308074

G.     Interest subject to Mortgagee:Fee simple

H.     Amount of original indebtedness, including subsequent advances made under the mortgage:

ONE MILLION EIGTH HUNDRED NINETY AND 00/100THS DOLLARS

30

($1,890,000,000.00)

I.    Legal description, common address and property identification number of the mortgaged real estate:

Legal description:

LOTS 132, 133, 134 AND THE SOUTHERLY 1/2 OF LOT 135 IN GEORGE F. KOESTER AND CO'S SECOND ADDITION TO SAUGANASH, A SUBDIVISION IN CALDWELL'S RESERVE IN TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED MARCH 15, 1928 AS DOCUMENT 9956617, IN COOK COUNTY, ILLINOIS

P.I.N. 13-03-113-023-0000

COMMONLY KNOWN AS: 6201 N. Kilpatrick Ave., Chicago, IL 60646

Improved with a single family residence

J.    Statement as to defaults and amounts now due:

The mortgagor defaulted under the Mortgage for failure to pay the monthly payments when due.

The amount now due by Foster. to the Plaintiff as of June 28, 2013, not including additional attorneys' fees and expenses, appraisal fees, title charges and other costs incurred under the Loan Documents:

| | |
|---|---:|
| Unpaid Principal | $1,868,151.55 |
| Unpaid Interest | 40,694.60 |
| Late Charges | 1,711.62 |
| TOTAL | $1,911,182.32 |

K.    Name of present owner of the mortgaged premises:

Jeffrey M. Foster

L.    Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:

None

31

M.    Name of defendants claimed to be personally liable for deficiency, if any:

Jeffrey M. Foster

N.    Capacity in which Plaintiff brings this foreclosure:

As mortgagee under the Mortgage recorded as Document No. 0617308074, together with all the indebtedness secured thereby.

O.    Facts in support of shortened redemption period:

The Mortgagee expressly reserves the right to enforce any provisions of the Illinois Mortgage, wherein the mortgagor waives any and all rights of redemption from sale under any order or decree of foreclosure of the Mortgage.

P.    Statement that the right of redemption has been waived by all owners of redemption:

The Mortgagee expressly reserves the right to enforce any provisions of the Illinois Mortgage, wherein the mortgagor waives any and all rights of redemption from sale under any order or decree of foreclosure of the Mortgage.

Q.    Facts in support of request for attorneys' fees, costs and expenses, if applicable:

Plaintiff is entitled to recover all expenses including, but not limited to, attorney's fees and costs, that it incurs pursuant to the terms of the Mortgage and  pursuant to the terms of the HELOC Note.

R.    Facts in support of request for appointment of mortgagee-in-possession or for appointment of a receiver, and the identity of the receiver if sought:

None

S.    Offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the Mortgage without judicial sale:

The Plaintiff does not make such offer.

T.    Name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated, and, if not elsewhere stated, the facts in support thereof:

Jeffrey M. Foster

32

Plaintiff requests for:

A.      an order for the appointment of a receiver; if requested

B.      a judgment of foreclosure of the Mortgage and sale of the subject property for payment of its lien and costs.

C.      confirmation of the foreclosure sale and issuance of a deed to the purchaser;

D.      personal deficiency judgments to the extent any should so exist at the time of confirmation of the foreclosure sale;

E.      a judgment for attorneys' fees, costs and expenses; and

F.      such other and further relief as the Court deems just.


Respectfully submitted,


/s/ James M. Crowley
James M. Crowley


James M. Crowley, Esq. (ARDC #06182597)
John F. Sullivan, Esq. (ARDC #6205900)
CROWLEY & LAMB, P.C.
221 N. LaSalle Street, Suite 1550
Chicago, Illinois 60601
Telephone: (312) 670-6900
Fax: (312) 467-5926
Email: jcrowley@crowleylamb.com