IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Jeff Foster, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2012 cv 3130 |
| v. ) | |
| ) | Honorable Judge: Mary M. Rowland |
| PNC Bank, National Association, ) | |
| ) | |
| Defendant. ) | |

**PNC BANK, NATIONAL ASSOCIATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS**

**I.      PRELIMINARY STATEMENT**

The loan documents for the Florida and Illinois properties are unambiguous and permit PNC Bank, National Association ("PNC") to recover all of its attorneys' fees and costs incurred over eight years of litigation with Jeff Foster ("Foster").  On March 25, 2020 this Court entered judgment in favor of PNC on each and every one of Foster's claims challenging PNC's interests in the Illinois and Florida properties and its rights under the loan documents, as well as judgment in favor of PNC on its counterclaims for foreclosure of the Illinois Mortgage and judgment on the Florida and Illinois Notes. [ECF # 178.]

In addition to recovery of its fees for prosecuting its foreclosure claims, which recovery Foster does not dispute, PNC is entitled to recover its attorneys' fees for defense of Foster's claims against PNC with respect to the Florida and Illinois loans, which claims sought to affect PNC's interest in the related Properties and its rights under the security instruments.

Therefore, PNC requests that this Court should award PNC: (i) attorneys' fees of $289,073.11 and costs of $5,571.31 related to the Florida loan and (ii) attorneys' fees of $304,533.00 and costs of $8.950.07 related to the Illinois loan.

1

II.        **FACTUAL BACKGROUND**

This litigation has been pending since April 2012 when Foster filed his first Complaint against PNC asserting claims affecting PNC's rights under the Florida loan and the Illinois loan and the validity and enforceability of the Illinois Note. [ECF # 1.] Foster's Complaint alleged claims related to a loan secured by real property commonly known as 6201 N. Kilpatrick in Chicago, Illinois (the "Illinois Loan") and a separate loan secured by real property commonly known as 56 Fiesta Way, Fort Lauderdale, Florida (the "Florida Loan"). [ECF #1.] Foster filed an Amended Complaint on May 10, 2013 [ECF #32], a Second Amended Complaint on May 13, 2015 [ECF # 75] and a Third Amended Complaint on December 28, 2015 [ECF #95].

PNC filed its Motion for Summary Judgment on all of Foster's claims: Violation of the Fair Credit Billing Act (Illinois Loan); Violation of the Fair Credit Reporting Act (Illinois Loan and Florida Loan); Breach of Contract (Illinois Loan and Florida Loan); Count Five—Breach of Implied Duty of Good Faith and Fair Dealing (Florida Loan); Fraud (Florida Loan); Unjust Enrichment and Disgorgement (Florida Loan); and Breach of Fiduciary Duty (Florida Loan. In that Motion, PNC also moved for summary judgment on its counterclaims seeking judgment based on Foster's default under the terms of the note evidencing the Florida Loan and for judgment based on Foster's default under the terms of the note evidencing the Illinois Loan and for foreclosure and sale of the mortgage securing the Illinois Loan. [ECF #157 & 158.]

On March 25, 2020, this Court entered summary judgment in favor of PNC and against Foster on all of Foster's claims and on PNC's counterclaims. [ECF # 178.]

***Foster does not dispute the reasonableness of the hourly rates charged or the specific entries for the costs and fees PNC requests.*** See Exhibit 1, Joint Statement Pursuant to Local Rule 54.3(e). While Foster does not dispute the reasonableness of PNC's fees and costs, Foster contends that PNC is entitled only to recover those attorneys' fees incurred specifically in

connection with PNC's counterclaims related to the Florida Loan and the Illinois Loan. Exhibit 1. If this Court concludes that PNC's claim for recovery of its attorney's fees and costs is ***not*** limited to those fees incurred solely in connection with its counterclaims related to the Florida Loan and the Illinois Loan, no dispute remains between the parties.

### III. LAW AND ARGUMENT

#### A. The Unambiguous Language of the Florida and Illinois Loan Documents Permit PNC To Recover All Of Its Attorneys' Fees And Costs Incurred During The Course Of The Litigation.

The plain language of the Florida and Illinois loan documents permit PNC to recover all of the attorneys' fees incurred by PNC during this lawsuit. It is a basic tenet of contract interpretation that contracts are construed in accordance with their plain language, as bargained for by the parties. *Konsulian v. Busey Bank, N.A.*, 61 So. 3d 1283, 1285 (Fla. 2d Dist. Ct. App. 2010){ TA \l "*Konsulian v. Busey Bank, N.A.*, 61 So. 3d 1283 (Fla. 2d Dist. Ct. App. 2010)" \s "Konsulian" \c 1 } (applying this principle to the language of a mortgage under Florida law); *Palm v. 2800 Lake Shore Drive Condominium Association*, 2014 IL App. 1st 111290, ¶75, 10 N.E.3d 307, 328 (1st Dist. 2014) (applying principle that language should be given plain and ordinary meaning under Illinois law). It is a court's duty to enforce the contract as plainly written and an unambiguous contract must be given effect as it is written. *Okeechobee Resorts, LLC v. E Z Cash Pawn, Inc.*, 145 So. 3d 989, 993 (Fla. 4th Dist. Ct. App. 2014){ TA \l "*Okeechobee Resorts, LLC v. E Z Cash Pawn, Inc.*, 145 So. 3d 989 (Fla. 4th Dist. Ct. App. 2014)" \s "Okeechobee" \c 1 } (citation omitted); *see also Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 735 (Fla. 2002){ TA \l "*Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732 (Fla. 2002)" \s "Siegle" \c 1 }; *Palm*, 2014 IL App. 1st 111290, ¶75, 10 N.E.3d 307, 328 (same proposition under Illinois law).

**1. The Florida Note, the Florida Mortgage, the Illinois Note, and Illinois Mortgage permit PNC to recover its attorney's fees because PNC's actions in defending against Foster's claims was to protect its rights under the loan documents.**

The Florida Note permits PNC to recover all fees or costs incurred to enforce PNC's rights in connection with the Florida Note:

> **(E) Payment of Note Holder's Costs and Expenses**
>
> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

[ECF #157-1, Ex. 4.]

In addition, the Florida Mortgage permits PNC to recover fees incurred to protect Lender's interest in the property and rights under the Mortgage:

> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.
>
> **14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

[ECF #157-1; Ex. 5.]

The Illinois Note at Section 7(E) permits PNC to recover all fees or costs incurred to enforce PNC's rights in connection with the Illinois Note:

> **COLLECTION COSTS**
>
> The borrower agrees to pay all costs, expenses, disbursements and fees, including, but not limited to, reasonable attorney's fees, incurred by the Bank to collect any sums owed hereunder.

[ECF #157 – 2; Ex. 1.]

The Illinois Mortgage also allows PNC to recover fees in any proceedings necessary to protect Lender's interest in the property:

> 6. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.
>
> Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

[ECF #157 -2; Ex. 2.]

Foster's claims against PNC impacted the validity and enforceability of the documents evidencing and securing the Florida Loan and the Illinois Loan, as well as PNC's interest in the properties and rights under the security instruments. The documents evidencing and securing the Florida Loan and the Illinois Loan specifically allow for recovery of attorneys' fees incurred to "protect" the lender's interest in the property and the rights under the security instrument or to enforce PNC's rights under the specific loan documents. (Florida Mortgage, Section 9; Florida Note, Page 6; Illinois Mortgage, Section 6, Illinois Note Section 7(E)). Giving "protecting" its

plain and ordinary meaning would include actions by PNC to "defend" or preserve.[1] *See Bank of Am., N.A. v. Oberman, Tivoli & Pickert, Inc.*, No. 13 C 1168, 12 F. Supp. 3d 1092, 1103 (N.D. Ill. 2014) (finding that the bank was entitled to attorneys' fees incurred in defending against borrower's lawsuit as loan agreement permitted bank to recover fees for protection of the loan agreement).

Foster's claims affected PNC's interest in the Florida and Illinois properties and its rights under the documents evidencing and securing these loans. Specifically, Foster's claims impacted PNC's rights under the Florida Mortgage and the validity and enforceability of the Illinois Note. As an example, Foster's claim that he did not sign the Illinois loan documents—in essence an argument that the loan was null and void—undoubtedly affected PNC's interest in the property and its ability to enforce its right to require repayment of the Illinois Loan. Foster also alleged claims under both the Florida Loan and Illinois Loan about PNC's rights to accept and apply payments—affecting PNC's rights under the documents evidencing and securing each Loan. Finally, Foster's claims on the Florida Loan regarding PNC's actions to require and then obtain lender placed insurance specifically challenged PNC's rights to protect its collateral from hazards and to enforce its rights to recover these costs from Borrower, as provided under the documents evidencing the Florida Loan.

PNC's fees and costs incurred in defending Foster's claims—claims which affected PNC's interest in the properties and rights under the loan documents—constituted actions to protect PNC's collateral and its ability to enforce its rights under the Loan Documents. Based on the plain language in the documents evidencing and securing the Florida Loan and the Illinois Loan, PNC is entitled to recover all of its attorneys' fees and costs incurred in this litigation.

---

[1] "protects." *Merriam-Webster.com*. Merriam Webster, 2020. Web. September 25, 2020, https://www.merriam-webster.com/dictionary/protects.

### 2. PNC's actions to defend against Foster's affirmative claims are inextricably intertwined with the counterclaims and PNC should be entitled to recover all of its attorneys' fees.

Each claim Foster brought against PNC in this action is sufficiently interrelated and intertwined with the counterclaims asserted by PNC with respect to the Florida Loan and the Illinois Loan and support PNC's recovery of all attorneys' fees and costs. *See, e.g., Am. Infoage, LLC v. Regions Bank*, No. 8:13-cv-1533-T-23JSS, 2016 U.S. Dist. LEXIS 181753, *22-23 (Fla.M.D. Dec. 7, 2016) (permitting recovery of all attorney's fees even though opposition contended contract authorized fees for only certain claims).

Courts have permitted a full recovery to be awarded if the claims involve a common core of facts that are based on related legal theories. *Anglia Jacs & Co. v. Dubin*, 830 So. 2d 169 (Fla. 4th Dist. Ct. App. 2002); *see Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1251 (11th Cir. 2013) (all the claims in the litigation were inextricably intertwined with the contract and justified an award of fees under a contractual attorneys' fee provision, when the party alleged no claims that could exist without the contract); *Current Builders of Fla., Inc. v. First Sealord Sur., Inc.*, 984 So. 2d 526, 534 (Fla. 4th Dist. Ct. App 2008) (awarding fees for multiple claims that involved a common core of facts and issues that were inextricably intertwined); *Regency Homes of Dade, Inc. v. McMillen*, 689 So. 2d 1204, 1205 (Fla. 3d Dist. Ct. App. 1997) (a full award of attorneys' fees was proper where issues for which attorneys' fees were permitted were intertwined with issues for which attorneys' fees were not permitted).

In this case, all of the claims brought against PNC involved the same loan transactions which are the subject of PNC's Counterclaims. Foster's claims involved the same underlying facts and related legal theories—most notably issues regarding payments and application of payments to the loans—and PNC prevailed in its defense of all claims. Because PNC's defense

7

of Foster's claims is inextricably intertwined with PNC's efforts to collect and enforce the documents evidencing and securing the Florida Loan and the Illinois Loan, all the fees and costs incurred by PNC are recoverable pursuant to the Loan Documents executed by Foster.

### B. PNC Is Entitled To Attorneys' Fees Incurred With Its Counterclaims.

There is no dispute between the parties that the Loan Documents entitle PNC to recover those fees incurred as part of prosecuting its counterclaims for foreclosure and to collect on the notes. *See* Exhibit 1; *see Riley v. Argonaut Midwest Holdings, LLC*, No. 06 C 5026, 2007 WL 2908824, *1-2 (N.D.Ill. Oct. 4, 2007); *PNC Bank v. Chicago Title Land Trust Co.*, 1:13-cv-00041, 2014 U.S. Dist. LEXIS 4249 (N.D.Ill Aug. 13, 2014) (when the instruments call for attorneys' fees in case of collection, a defendant is liable for attorneys' fees in compliance with the terms of the instrument); *see Deutsche Bank Nat'l Trust Co. v. Fine*, No. 2:06-cv-417-FtM-34SPC, 2007 U.S. Dist. LEXIS 47712, at *6 (M.D. Fla. July 2, 2007) (under Florida law, a court may award costs agreed to at the inception of a contractual relationship).

As discussed above, even if this Court were to accept Foster's contention that PNC is not entitled to fees for anything other than those incurred in connection with its Counterclaims related to the Florida Loan and Illinois Loan, there is no way to disentangle the fees which PNC has incurred in this litigation, as they are so closely intertwined. Notably, at the time Foster filed his lawsuit on April 27, 2012, Foster was in default on both the Florida Loan and the Illinois Loan. [ECF #157-1; Ex. 28; ECF #157-2; Ex. 10.] As of the filing of his lawsuit, PNC had already sent Foster a notice of default for both the Florida Loan and Illinois Loan at the time of the lawsuit. [ECF #157-1; Ex. 28; ECF #157-2; Ex. 10.] These defaults and their timing in

relation to the filing of Foster's lawsuit, are further evidence that Foster's claims are intertwined with his default and PNC's rights under the loan documents.

Moreover, Foster's contention that PNC is only entitled to a portion of its fees and its proposed fee calculation is arbitrary and fails to take into account work that impacted both matters which were the subject of the Counterclaim by PNC and Foster's claims. Exhibit 1 at Section 2. PNC had to resolve all claims raised by Foster in his lawsuit, before the PNC could move for judgment on its Counterclaims.

        C.        **Foster's Counsel Does Not Dispute the Reasonableness of The Fees**

PNC has provided evidence in the form of declarations from its counsel and detailed billing records and billing rate information in this case to support its request for fees.[2] Foster does not contest the reasonableness of the hourly rates or the time billed to the specific billing entries. *See* Exhibit 1. Indeed, the parties agree that if this Court concludes that PNC is ***not limited*** to recover only the fees incurred in connection with its counterclaims for the Florida Loan and the Illinois Loan, no dispute remains between the parties.

As set forth in the attached declarations of James M. Crowley and Marcel C. Duhamel, PNC seeks attorneys' fees and costs as follows:

**Attorneys' Fees**

| Loan | Crowley | Plunkett | Vorys | Total |
|---|---|---|---|---|
| Florida Loan | $102,412.89 | $23,967.89 | $162,692.33 | $289,073.11 |

---

[2] The Seventh Circuit distinguishes contractual-fee shifting provisions from statutory fee-shifting provisions. See, e.g., *VLM Food Trading Int'l v. Ill. Trading Co.*, Case No. 12 C 8154, 2013 U.S. Dist. LEXIS 96737 (N.D.Ill. July 11, 2013) *citing Matthews v. Wisconsin Energy Corp.*, 642 F.3d 565, 572 (7th Cir. 2011). The standard on whether to award fees in a contractual fee-shifting case is a "commercially-reasonable standard and does not require courts to engage in detailed, hour-by-hour review of a prevailing party's billing records." *Id.* (citations omitted). Under Florida law, in addition to determining if attorneys' fees are permitted by the contractual provision, courts also review whether the amount sought if reasonable. *PNC Bank, N.A. v. Starlight Props. & Holdings, LLC*, No. 6:13-cv-408, 2014 U.S. Dist. LEXIS 78087, *26 (M.D. Fla. Apr. 25, 2014)

|  |  |  |  |  |
|---|---|---|---|---|
| Illinois Loan | $112,419.75 | $63,370.00 | $128,743.75 | $304,533.50 |
|  |  |  | **Total** | $593,606.61 |

**Costs**

| Loan | Costs |
|---|---|
| Florida Loan | $5,571.31 |
| Illinois Loan | $8,950.07 |
| **Total** | $14,521.38 |

### IV.  CONCLUSION

Based on the plain language in the loan documents—the contracts controlling the award of attorneys' fees—PNC respectfully requests that this Court award PNC its fees and costs as follows:

attorneys' fees of $289,073.11 and costs of $5,571.31 related to the Florida Loan; and

attorneys' fees of $304,533.50 and costs of $8.950.07 related to the Illinois Loan.

In addition, pursuant to the Judgment of Foreclosure entered June 2, 2020, in connection with the Illinois Loan [ECF # 208] should this Court grant PNC's petition for attorneys' fees and costs, said order shall provide that the Court has approved the portion of the lien attributable to attorneys' fees only for purposes of the foreclosure sale, and not for purposes of determining the amount required to be paid personally by Jeff Foster in the event of redemption by Jeff Foster, or a deficiency judgment, or otherwise.

In the event of redemption by Jeff Foster or for purposes of any personal deficiency judgment, this court reserves the right to review the amount of attorneys' fees to be included for either purpose. Further, said order shall provide that PNC's counsel will be required to notify

Foster of the provisions of this order at the time the Court grants all or any portion of PNC's petition for reimbursement of attorney's fees and costs.

                Respectfully submitted,

                PNC BANK, NATIONAL ASSOCIATION

                */s/ Marcel C. Duhamel*
                Marcel C. Duhamel, Esq. (Ohio Bar No. 0062171 *pro hac vice*)
                Lindsay Doss Spillman (Ohio Bar No. 0086849 *pro hac vice*)
                Vorys Sater, Seymour and Pease, LLP
                200 Public Square, Suite 1400
                Cleveland, OH 44114
                Phone: (216) 479-6100
                Email: MCDuhamel@vorys.com
                ldspillman@vorys.com

                James M. Crowley, Esq. (ARDC 6182597)
                John F. Sullivan, Esq. (ARDC 6205900)
                Plunkett Cooney, PC
                221 N. LaSalle Street, Suite 1550
                Chicago, IL 60601
                (312) 670-6900
                jcrowley@plunkettcooney.com
                jsullivan@plunkettcooney.com